JAMES K. LEDCKE *v.* STATE OF INDIANA.

[No. 1071S303. Filed May 16, 1973.]

*John D. Clouse, John C. Cox, Philip H. Hayes,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal by James K. Ledcke, appellant (defendant below), from a conviction for possession of marijuana, which at the time of the crime was a violation of the 1935 Narcotics Act as amended (Ind. Ann. Stat. §§ 10-3519 & 3520 [1970 Supp.]). Appellant was charged by affidavit on September 29, 1970, and entered a plea of not guilty. Trial to a jury commenced on March 17, 1971, and the jury returned a verdict of guilty. On March 30, 1971, the appellant was sentenced to not less than two years nor more than ten years in the Indiana Reformatory, was fined one thousand dollars, and was disenfranchised for two years. Appellant's motion to correct errors was overruled and this appeal followed.

Appellant makes several allegations of error which are as follows:

1. The bailiff in charge of the jury was not sworn as required by law;

2. The evidence was insufficient to support the conviction;

3. Since another person had been convicted of possessing the same marijuana, the matter was *res judicata;*

4. The affidavit of probable cause for the arrest warrant was insufficient;

5. Appellant could not be convicted under the statute, because it was repealed by the Indiana Code of 1971;

6. The Act under which appellant was convicted was in violation of the due process, because it attempted to define marijuana as a narcotic drug;

7. The Act under which appellant was convicted was invalid, because federal legislation had pre-empted the field of drug abuse;

8. A witness for the State should have been permitted to answer a question posed to him during cross-examination;

9. The State's exhibits should not have been admitted into evidence;

10. The trial court erred in giving certain instructions and in refusing to give other instructions.

Appellant first claims that the bailiff in charge of the jury was not sworn as required by statute. However, affidavits indicate that the bailiff was sworn and also that he did not communicate with the jury nor permit others to communicate with the jury. Additionally, appellant has failed to show how he might have been prejudiced by the appellate failure to swear in the bailiff. We find no merit to appellant's contention.

Appellant's second allegation is that the evidence was insufficient to support a conviction. When reviewing the sufficiency of the evidence, this Court will not weigh the evidence nor determine the credibility of the witnesses. Only that evidence most favorable to the State and the reasonable inferences to be drawn therefrom will be considered. As long as there is substantial evidence of probative value sufficient to establish every material element of the crime the verdict will not be disturbed. *Jackson* v. *State* (1971), 257 Ind. 589, 275 N. E. 2d 538.

The evidence most favorable to the State is as follows: On September 3, 1970, in the city of Evansville, ten police officers conducted a raid on an apartment pursuant to a search warrant. The search was for marijuana. One of the tenants was on the front porch and he let the officers in. Very heavy smoke permeated the entire apartment and the source of the

smoke was found to be two skillets full of green vegetation in the oven. Several officers who participated in the raid and who were experienced with marijuana were of the opinion that, judging by the odor, the smoke was marijuana smoke. The kitchen floor was almost covered with the green vegetation. Also in the kitchen was a duffel bag half filled with the same type of material. Another duffel bag full of the material was found right off the kitchen and just inside the bedroom door. A white plastic bag and a brown paper bag of "processed" plant life were found in the dining room. There was testimony that in order to process marijuana, it first must be dried either in the sun or in an oven, and then the plant is finely chopped much like tobacco. Chemical and biological tests were conducted on all the substances found at the various spots in the house, and all were shown to be marijuana.

Besides the tenant who was found on the front porch, one person was found in the living room and another was found in the kitchen. The appellant was discovered in the bedroom and was apparently trying to exit through the back door. A search of appellant's person revealed no incriminating evidence. Appellant was not a tenant.

It is clear from this evidence that marijuana was being processed in the house at the time the police entered and extremely large quantities were spread over the floor. Marijuana was being dried in the oven and *heavy* smoke was found throughout the house. Appellant was found alone in the room where one of the large bags of marijuana was found, and was attempting to flee when apprehended. From these facts the jury was warranted in finding that the appellant was working in concert with the other three persons in the "manufacture" of marijuana. The statute in force at the time read in part:

> "It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, compound or use any narcotic drug. . . ." Ind. Ann. Stat. § 10-3520.

Although appellant was charged with possession and not "manufacture," it would be impossible to "manufacture" the marijuana without at least constructively possessing the marijuana as well. Chief Justice Arterburn has held that one cannot sell narcotics without at least constructively possessing them. See *Thompson* v. *State* (1972), 259 Ind. 587, 290 N. E. 2d 724. The case of sale and the case of manufacture are analogous.

It is *possible* in a situation such as the one we have before us that the appellant was merely present on the premises and committed no wrongdoing. However, the activity was so obvious that the jury was entitled to infer that the appellant was involved. The State therefore established a *prima facie* case from which the jury could find the appellant guilty. If at that point the appellant had an exculpatory explanation or exonerating evidence to explain his presence, he could then present such evidence. Absent this, the evidence would be sufficient to support a conviction on review.

The facts in the case at bar indicating that marijuana was being processed are analogous to the operation of an illegal still for the production of whiskey. In *United States* v. *Gainey* (1965), 380 U.S. 63, the Supreme Court of the United States considered the constitutionality of a statute which permits a conviction for illegally operating a still when one is shown to have been at a place where an illegal still is located unless one produces evidence to expain the circumstances of his presence. The Court then approved the following instruction:

"I charge you that the presence of defendants at a still, if proved, with or without flight therefrom, or attempted flight therefrom, if proved, would be a circumstance for you to consider along with all the other testimony in the case. Of course, the bare presence at a distillery and flight therefrom of an innocent man is not in and of itself enough to make him guilty. It is possible under the law for an innocent man to be present at a distillery, and it is possible for him to run when about to be apprehended, and such an innocent man ought never to be convicted, but presence

at a distillery, if you think these men were present, is a circumstance to be considered along with all the other circumstances in the case in determining whether they were connected with the distillery or not. Did they have any equipment with them that was necessary at the distillery? What was the hour of the day that they were there? Did the officers see them do anything? Did they make any statements?

"It is your duty to explore this case, analyze the evidence pro and con fairly. Presence at a still, together with other circumstances in the case, if they are sufficient in your opinion to exclude every reasonable conclusion except that they were there connected with the distillery, in an illegal manner, ... carrying on the business as charged ..., if you believe those things, would authorize you in finding the defendants guilty.

"And under a statute enacted by Congress a few years back, when a person is on trial for ... carrying on the business of a distiller without giving bond as required by law, as charged in this case, and the defendant is shown to have been at the site of the place ... where and at the time when the business of a distiller was engaged in or carried on without bond having been given, under the law such presence of the defendant shall be deemed sufficient evidence to authorize conviction, unless the defendant by the evidence in the case and by proven facts and circumstances explains such presence to the satisfaction of the jury.

*"Now this does not mean that the presence of the defendant at the site and place at the time referred to requires the jury to convict the defendant, if the defendant by the evidence in the case, facts and circumstances proved, fails to explain his presence to the satisfaction of the jury. It simply means that a jury may, if it sees fit, convict upon such evidence, as it shall be deemed in law sufficient to authorize a conviction, but does not require such a result."* (emphasis added in *Gainey*) 380 U.S. at 69-70.

Thus, under this statute and instruction, the jury is not *required* to convict if a defendant fails to explain his presence, but it is enough for the State to avoid a directed verdict and get its case to the jury. Presence at the situs is but one of many circumstances to consider. The instruction must place its emphasis on the evidence as a whole, so it cannot be interpreted as a comment on the defendant's failure to testify.

The reason for the statute is because of "the practical impossibility of proving . . . actual participation in the illegal activities except by inference drawn from [the defendant's] presence when the illegal acts were committed. . . ." 380 U.S. at 65.[1] Although the rule applicable to illegal stills is based on a statute, it states a rule of evidence as to methods of proof which is logical and which we should and can adopt without treading into the realm of judicial legislation. In fact, methods of proof are, in most cases, more appropriately a judicial function rather than a legislative function. We find the reason for this rule as applied to still cases just as compelling in the case of the illegal manufacturing of a narcotic or dangerous drug (such as the processing of marijuana or the "cutting" of heroin). It often may not be the wrongdoer's residence, he will not be the only person present, and he will not be in actual possession of either the drugs or any of the equipment when apprehended.

We must reiterate that presence does not compel a conviction, but is simply one of the factors to consider. However, in a manufacturing type setting it is enough to present a *prima facie* case, and if other circumstances and evidence do not provide an explanation for the presence, it is sufficient to support a conviction. It does "no more than 'accord to the evidence, if unexplained, its natural probative force.'" 380 U.S. at 71. Guided by these principles, we find the evidence in the case at bar sufficient to support the conviction.

Limitations exist to the application of the rule. We are here concerned only with a manufacturing type of setting. We are not here concerned with a person being present where others are merely in possession of illegal narcotics. In the case of simple possession:

---

1. Quoting from Hearings before a Subcommittee on Ways and Means on Excise Tax Technical and Administrative Problems, Part 3, p. 95, 84th Cong., 2d Sess.

"[M]erely being or having been present in a place where marijuana is found is not sufficient proof that such person is in possession of the drug where he is not in exclusive possession of the place." *Arant* v. *State* (1972), Fla. App., 256 So. 2d 515, 516.

The reason is that normally, without more, no "natural probative force" can be placed upon mere presence at a place where narcotics are found. One could just as easily be present innocently as guiltily. Although evidence of presence would certainly be relevant, it alone would not be sufficient to sustain a conviction. See *Commonwealth* v. *Florida, Tirpak* (1971), 441 Pa. 534, 272 A. 2d 476;[2] *City of Cincinnati* v. *McCartney* (1971), 30 Ohio App. 2d 45, 281 N. E. 2d 855.[3]

Appellant's next argument is that another person present at the house was convicted of possessing the same marijuana and therefore the issue was *res judicata*. We find no merit to this contention. Possession of drugs can be joint, see *Thomas* v. *State* (1973), 260 Ind. 1, 291 N. E. 2d 557, so that more than one person can be convicted for possessing the same drugs. Just as the State can convict two or more people for acting in concert to commit the same robbery, the State can also convict two or more people for possessing the same marijuana.

---

2. In this case, the police raided an alleged pot party. Seven people, including the four appellants, were found in the game room. All seven were guests of a girl who lived in the house with her parents. Also found on the floor in the center of the game room was an open jar containing marijuana and four butts in an ashtray which were shown to contain marijuana. No marijuana was found on anyone's person and no one was seen smoking any marijuana. The court held this evidence to be insufficient.

3. In this case, the police raided an apartment where eight people were present and marijuana plants were found growing in the front of some sliding glass doors. The defendants were seated on chairs about six feet from the plant. No marijuana was found on the person of the defendants. The court stated:

"It cannot be successfully argued that being seated six feet from growing marijuana plants in an apartment not occupied, rented or used as living quarters by the defendants would be sufficient evidence to prove they were in actual or constructive possession of such plants." 30 Ohio App. 2d at 48, 281 N.E. 2d at 856.

Appellant next contends that it was erroneous to overrule his Motion to Quash the arrest warrant. He argues that the affidavit upon which the warrant is based must "allege substantially the offense . . ." (IC 1971, 35-1-6-2 (Ind. Ann. Stat. § 9-602 [1972 Supp.])), and that the affidavit does not so allege in this instance. He correctly states that at the top of the affidavit the offense is described as "VIOLATION OF THE 1935 NARCOTIC ACT (AS AMENDED)." He argues that since there are several crimes under the Act, merely stating that the Act is violated does not "allege substantially the offense." However, in the body of the affidavit is the following statement:

"[Appellant] did then and there unlawfully and feloniously have in his possession and under his control a narcotic drug, to wit: marijuana. . . ."

This statement alleges the offense with specificity and meets the statutory requirement. The trial court committed no error in overruling appellant's Motion to Quash the arrest warrant.

Appellant's next contention is that the statute under which he was convicted was repealed by the new Indiana Code of 1971, and therefore he could not be convicted under it. Appellant cites IC 1971, 1-1-1-6 which states:

"All felonies and misdemeanors committed under acts in force prior to the effective date of this Code shall be prosecuted and remain punishable as provided in those acts.

"This Code does not affect any rights or liabilities accrued, penalties incurred, or proceedings begun prior to the effective date of this Code. The rights, liabilities and proceedings are continued; and punishments, penalties or forfeitures shall be imposed and enforced as if this Code had not been enacted."

Appellant admits that this might end the argument, but claims that it is not logical to retain the penalties and yet repeal the statute. However, the Code answers this argument. IC 1971, 1-1-1-5 states in part:

"(a) The provisions of the Indiana Code of 1971 are intended to be continuations or amendments of applicable or corresponding provisions of previously existing laws. The operation and effect of any law re-enacted by this Code is intended to continue, without interruption, just as if such law so re-enacted had not been repealed by this Code."

Reading these two sections together, it is clear that the result is that the statutes as a whole are effectively continued and not simply the penalties. We find no merit to appellant's argument.

Appellant next contends that it violates due process under the Fourteenth Amendment to the Constitution of the United States and due course under Art. 1, § 12 of the Constitution of Indiana to define marijuana as a narcotic drug. The General Assembly placed marijuana within the ambit of the dangerous drug act subsequent to appellant's offense, but marijuana came under the Narcotic Act at the time of the offense. Appellant argues that the testimony of the State's expert witness and recent scientific evidence demonstrate that marijuana is not a narcotic drug. Even accepting that marijuana is apparently not a "narcotic drug" in the scientific sense, appellant has failed to demonstrate how this fact denies him of life, liberty, or property without due process of law. The statute specifically proscribed the possession of marijuana. This is not a case where narcotics were generally prohibited without mention of marijuana, and with a resulting decision that marijuana should be included within that general category. See *Burk* v. *State* (1971), 257 Ind. 407, 275 N. E. 2d 1. The statute succinctly states that possession of marijuana is proscribed, and appellant could have no doubts that such an act is unlawful. In his reply brief, appellant cites *People* v. *McCabe* (1971), 49 Ill. 2d 338, 275 N. E. 2d 407, but that case involved the equal protection clause and is therefore not applicable to appellant's argument.

The legislature has the power to define crimes and to specify the punishment to be imposed. *State* v. *Clark* (1966),

247 Ind. 490, 217 N. E. 2d 588. Appellant argues that the legislature cannot redefine a rabbit to bring it under a horse theft statute, nor redefine Monday into Sunday. We agree. However, the legislature can define rabbit theft as a crime and can prohibit the sale of liquor on Monday. In the case at bar, the legislature did not define marijuana as being synonomous with heroin or any other drug listed in the 1935 Narcotic Act (as amended) ; it merely stated among other things that possession of marijuana was a crime under the Narcotic Act and provided the penalty for it. We can see no way in which such action results in a denial of due process.

Appellant next contends that the federal government has pre-empted the field of narcotic and dangerous drugs so that the states have no power to regulate in this area. We do not agree. 21 U. S. C. §§ 801-966 concern drug abuse and 21 U. S. C. § 903 states:

"No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together."

Thus, it is clear that concurrent jurisdiction was intended. Even without such an explanatory provision, the regulation of drug abuse is a state concern with special local problems necessitating use of the state police power. Appellant cites *Pennsylvania* v. *Nelson* (1956), 350 U.S. 497. However, drug regulation fails to meet *any* of the three tests concerning pre-emption established in *Nelson*. "First, '[T]he scheme of federal regulation' "*is not*" 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.' " 350 U.S. at 502. "Second, the federal statutes" *do not* " 'touch a field in which the federal interest is so dominant that the federal system [must] be assumed to

preclude enforcement of state laws on the same subject.' " 350 U.S. 26 504. Third, enforcement of state laws concerning drugs and narcotics *do not present* "a serious danger of conflict with the administration of the federal program." 350 U.S. at 505. Based on these standards, the states are not without authority to regulate in the field of drugs and narcotics.

Appellant next claims that it was erroneous to sustain the State's objection to the following question which appellant's attorney asked of one of the police officers on cross-examination:

> "In your education program of yourself, Officer Stillwell, have you determined what part of the plant is legal to possess and what part is not legal to possess?"

This was properly excludable because it involved a question of *law* and therefore not an appropriate subject of an opinion. *Baker* v. *State* (1964), 245 Ind. 129, 195 N. E. 2d 91. Appellant claims that what part of the plant is illegal constitutes an important issue; however, the jury was instructed as to which parts of a marijuana plant are excluded from coverage under the statute when the trial court gave State's Instruction No. 2. No error arose from the trial court's sustaining of the State's objection to the above quoted question.

Appellant additionally argues that it was error to admit certain exhibits. These exhibits were two different skillets containing greenish vegetable material, a brown paper bag containing greenish vegetable material, a white plastic bag containing processed greenish vegetable material, and two green duffel bags containing greenish vegetable material. First, appellant claims it was error because the exhibits were offered during redirect examination of the State's expert on drug identification. However, the exhibits were offered during the State's case-in-chief and a proper foundation had been laid for their admission. The exhibits were not testimonial in nature so that it is immaterial whether they were offered on direct or re-direct examination.

Secondly, appellant objects to the introduction of the whole plants because only a small part of them was chemically analyzed, and thirdly, he objects because the exhibits partially contained material which it was not illegal to possess. The subject matter of the exhibits was relevant and the exhibits were sufficiently connected to the scene of the crime to permit their admission. Prior evidence indicated that each exhibit contained some material which it was illegal to possess, and the admission of the whole of the material gave a much clearer picture to the jury of the matter found on the premises at the time of appellant's arrest. The evidence was demonstrative of the testimony of the several police officers in explaining the exact material found in the course of the raid. No error was committed by the trial court and no prejudice to appellant resulted when these exhibits were admitted into evidence.

The remainder of appellant's allegations of error concern the instructions in the cause. Appellant first claims that it was erroneous to give State's Instruction No. 1 defining possession. He argues that the instruction is not a correct definition of possession. However, he fails to point out in what way the definition is incorrect. He cites *Williams* v. *State* (1969), 253 Ind. 316, 253 N. E. 2d 242, which speaks of possession and the distinction between possession and control. The instruction does not appear to be in contravention of *Williams* and appellant has not indicated any points of conflict. Appellant also contends Defendant's Instructions No. 1 and No. 4 concerning possession should have been given, but they were adequately covered by State's Instruction No. 1 which was given. A trial court need not give a tendered instruction where it is adequately covered by other instructions which are given. *Shack* v. *State* (1972), 259 Ind. 450, 288 N. E. 2d 155. Appellant claims that the State's Instruction No. 3 was erroneous because it did not instruct that the State must prove its case beyond a reasonable doubt. However, three other instructions covered the

requirement of proof beyond a reasonable doubt, so that the jury was thoroughly instructed on this burden. Appellant contends his Instruction No. 5 should have been given. This instruction said that the State must prove that marijuana was a narcotic drug. As we noted above, the statute specifically proscribed possession of marijuana, not simply narcotic drugs in general. No requirement fell upon the State to prove marijuana was a narcotic drug, and the trial court committed no error by refusing to give this instruction. Appellant finally claims that it was erroneous to refuse Defendant's Instruction No. 6 which stated that if the jury found another person had been convicted of possessing the same marijuana, then appellant could not be found guilty. As we noted hereinbefore, a conviction of one for possession of certain marijuana does not preclude the conviction of another for possessing the same marijuana, since we recognize the principle of joint possession.

For all the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.

Arterburn, C.J., Givan and Prentice, JJ., concur; DeBruler, J., dissents with opinion.

### DISSENTING OPINION

DeBruler, J.—I must respectfully dissent from the majority's disposition of this case. The evidence given at the trial is insufficient to support the verdict of the jury that this appellant "possessed" the marijuana. The circumstances and events shown by the evidence as described in the majority opinion merely support the conclusion that the appellant was near the marijuana and that he had knowledge of the presence of marijuana near him. However, being physically near the substance with knowledge of the physical location of the substance does not constitute "possession." While admittedly there is evidence that the appellant had the ability to touch, use, and assist in the processing of the marijuana, there is

no evidence that he had the intent to do so. In the absence of an intention on his part to exercise dominion over the marijuana, I do not believe it can be concluded as the majority does, that he constructively possessed it.

Also, the evidence of the police officer that the appellant was in the process of exiting the back door of the apartment when first seen, is not transformable into evidence of an attempt to flee to avoid detection or arrest. There is no evidence from the officer who observed this phenomenon that the appellant, upon becoming aware of the presence of police officers, immediately sought to escape their detection or arrest, by leaving the apartment through the back door. The majority is in error in considering this evidence as supporting the jury's verdict that the appellant is guilty of the charge of unlawfully possessing marijuana.

The majority has created an artful characterization of the facts of this case when it has described the apartment and activities there as a manufactory of marijuana. While the description is seductive, I believe it cannot serve to support the conclusion reached by the jury that this appellant possessed the marijuana. This apartment is, impliedly, at least, being compared to a factory in which items of commerce are being produced and filled with persons whose function it is to further the industrial ends of the place. A factory is a *place* used for the purpose of manufacturing, and it is a place that is used over a long period of time for the same use. The people found in that place during its operation may be presumed to be engaged in its enterprise. These underlying notions of the nature of a place of manufacture do not adhere to this apartment. At least one of the men arrested actually lived in the apartment. This was a home where all of the homelike activities of human beings takes place. They read, sleep, eat, listen to music, talk, watch TV, and receive friends and neighbors. There was no evidence that this apartment had been used for processing marijuana on any previous occasion or that it was a center for illegal

trafficking in marijuana. There is no evidence that this appellant had been there more than once or even for an extended period of time on the day of the arrest. No natural presumption arises that all present in such a place of residence are steadfastly engaged in the same activity, no matter how "obvious" such an activity might be. In cases such as *U.S.* v. *Gainey* (1964), 380 U.S. 63, 85 S. Ct. 754, 13 L. Ed. 2d 658, relied upon by the majority, illegal distilleries are more often than not hidden off the beaten track. In such cases as in the case of the actual factory, there is a natural inference that those present at that location are engaged in the only enterprise around. On the other hand if the illegal enterprise is moved into a private apartment, or other place in which it is usual to carry on a multitude of other and completely lawful activities, then and in that event, it is not rational to infer that everyone present there is engaged in the unlawful enterprise.

NOTE.—Reported in 296 N. E. 2d 412.