NORMAN MILLS *v.* STATE OF INDIANA

[No. 2-277A45. Filed September 5, 1978.]

*John Muller*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General of Indiana, *Dennis K. McKinney*, Deputy Attorney General, for appellee.

YOUNG, J. — This case is an appeal from a conviction of violating the Indiana Controlled Substances Act, IC 1971, 35-24.1-4.1-6 (Burns Code Ed.). The Appellant, Norman Mills, was charged and found guilty of possessing heroin, of a weight less than ten grams, for which he was sentenced to three years imprisonment. On appeal, Mills has made four assignments of error, properly raised and preserved, for our determination.[1] We herein affirm his conviction.

---

1. A fifth error raised in Mills' Motion to Correct Errors is waived on appeal, as it was not argued in the Appellant's brief. Ind. Rules of Appellate Procedure, A.P. 8.3(A).

On the basis of an affidavit recounting the affiant policeman's personal observation of the execution of two "controlled buys," a search warrant was issued for the residence, shared by Mills and a woman friend, in which the sale apparently took place. The search warrant was executed the same day. The officers met Mills as he was leaving his residence, identified themselves, and returned him to the house where the officers read Mills the search warrant and informed him of his rights. The officers then searched the residence. One officer was designated evidence custodian and as objects were found they were brought to him. The woman with whom Mills shared the residence was not present. On the basis of the items found, namely bindles of a substance which proved to be heroin and paraphernalia including syringes, Mills was found guilty of possessing a controlled substance.

Mills' first assignment of error is the admission of evidence seized pursuant to the search warrant, of which he questions the validity on four grounds.

Mills first attacks the warrant on the ground that the affidavit stated no facts relating to the credibility of the "informant." IC 1971, 35-1-6-2 (Burns Code Ed.) provides that where an affidavit is based on hearsay the affiant must state facts within his personal knowledge as to the credibility of the informant. Strict compliance with the statute is required. *Madden v. State* (1975), 263 Ind. 223, 328 N.E.2d 727, 728. The "informant" referred to by Mills is the unnamed person who acted the role of buyer in the controlled buy arranged on two occasions by the Sheriff's Department. A controlled buy consists of searching the person who is to act as the buyer, removing all personal effects, giving him money with which to make the purchase, and then sending him into the residence in question. Upon his return he is again searched for contraband. Except for what actually transpires within the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and they closely watch all entrances to the residence throughout the transaction.

In a similar case, *Hignut v. State* (1973), Ct.Sp.App.Md., 303 A.2d 173, a Maryland court found that the police observation involved in a control-

led buy is sufficient corroboration to establish the credibility of the informant, under *Spinelli v. United States* (1969), 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. The court further noted that

The informant's story, once "credibility" is established, becomes little more than surplusage. If the informant had been nothing more than a robot or a trained ape, the directly observed "controlled buy"—with the informant as a mere mechanical agent—would have been sufficient to establish probable cause.

303 A.2d at 181.

We agree that where the controls are adequate, the affiant's personal observation of a "controlled buy" may suffice as grounds for a finding of probable cause.

Probable cause was determined, in the present case, solely on the bais of the affiant's observation of the controlled buys. There was no mention in the affidavit of any statements of the "buyer" as to what occurred inside the residence. His credibility was not relied on, therefore the affidavit cannot be said to be based on hearsay and the directions of the statute are inapplicable.

Mills next claims the warrant to be defective for lack of specificity as to the items to be seized. The warrant in this case consists of a printed form with a number of blank lines on which the affidavit was copied in full. Below these lines is printed the following:

And the Court having examined said affidavit and being fully advised in the premises, now finds there is probable cause for the issuance of this search warrant.

You are, therefore, commanded, in the name of the State of Indiana, with the necessary and proper assistance, in the day time or in the night time, to enter into the premises described in said affidavit and there diligently search for the said . . . . . . . . . . . . . . . . aforesaid, and that you bring the same or any part thereof found on such search, forthwith before me, at my office, to be disposed of according to law.

Mills bases his argument on the failure to enter anything in the above blank.

IC 1971, 35-1-6-3 (Burns Code Ed.) provides the following form for

search warrants:

State of Indiana )
) SS:
County of Marion )

To any constable, police officer, sheriff or conservator of the peace, greeting:   Whereas, there has been filed with me an affidavit of which the following is a copy:   (Here copy the affidavit.) You are, therefore, commanded, in the name of the State of Indiana, with the necessary and proper assistance, in the daytime or in the nighttime to enter into or upon the premises described in said affidavit and there diligently search for said goods and chattels, to wit:   in said affidavit described and that you bring the same, or any part thereof found on such search, forthwith before me at my office, to be disposed of according to law.
Given under my hand this _____ day of _____, 19____.

The example indicates that the affidavit can be copied into the search warrant, and that the necessary specificity may be found by referring to the affidavit. In this case, the affidavit clearly specified that the warrant is sought in order to conduct a search for heroin. The affidavit, being copied into the body of the search warrant in compliance with the above statute, is a part of the search warrant. *McAllister v. State* (1974), 159 Ind.App. 340, 306 N.E.2d 395, 397. Therefore, the items to be seized are adequately described. *See United States v. Freeman*, 532 F.2d 1098, 1100 (7th Cir. 1976).

Mills further claims the warrant to be defective in that he was named therein as Norman Miller rather than Norman Mills. He argues that because of this error the warrant does not adequately describe the place to be searched, thus imbuing the officers executing the warrant with fatal discretion. In *Snedegar v. State* (1926), 198 Ind. 182, 150 N.E. 367, the Indiana Supreme Court ruled with respect to this issue.

The place to be searched and the things to be seized were particularly and definitely described, and, although there was a mistake in naming the person in possession of the things to be seized, such mistake will not invalidate the warrant or render illegal the search, for it is the certainty of place and the specific articles there possessed which are the vital elements of a valid search warrant. Article 1, § 11, Constitution of Indiana; section 8338, Burns' 1914. Naming

the person in possession, as was done in this case, may be treated as information for locating the place. In short, the sole purpose of a search warrant is the discovery, at a particular place, and seizure by the officer charged with its enforcement, of specific articles which constitute or contain evidence of crime.

150 N.E. at 368.

In the present case, both the place to be searched and the items to be seized are clearly and definitely described. The residence is described both by street address and physical appearance, and the woman with whom Mills shared the residence is correctly identified. This is a sufficiently specific description to negate the uncertainty created by misnaming Mills.

Finally, Mills contends that the failure to include an inventory of items seized in the sheriff's return of the warrant requires that the evidence be suppressed at trial. This precise question has not been addressed in Indiana.[2] IC 1971, 35-1-6-4.1 (Burns Code Ed., Supp. 1977) requires that a return on a warrant be directed to the issuing court or judge, indicating the date and time the warrant was served, and including a list of items seized. It is the near-unanimous opinion of those jurisdictions ruling on this issue that the failure to comply with a statute requiring the attachment of inventories to returns is merely neglect of a ministerial duty and neither invalidates the warrant or the search nor affects the admissibility of the items seized. See *State v. Montoya* (1974), N.M.App., 520 P.2d 275, Judge Hendley's dissent, and cases cited therein. One purpose of requiring the inventory is to protect the proprietary interest of the owner of the items seized. It is unnecessary to invoke the exclusionary rule where there are civil remedies available for any loss or destruction of property. Also, the failure to attach an inventory cannot have prejudiced Mills in the preparation of his defense, as such material is clearly discoverable under *Rowe v. State* (1974), 262 Ind. 250, 314 N.E.2d 745. We find in this failure, therefore, no grounds for reversal.

---

2. In *Carson v. State* (1932), 204 Ind. 273, 183 N.E. 544, the amendment of a return was permitted on the ground that the making of a return is a ministerial duty. This case has been overruled on every ground except this one. *State v. Marion County Munic. Ct.* (1955), 234 Ind. 467, 127 N.E.2d 897, 900; *Rohlfing v. State* (1949), 227 Ind. 619, 88 N.E.2d 148, 150.

Mills' second assignment of error is the refusal of the trial court to compel disclosure of the identity of the "informant" who participated in the controlled buy.

In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the United States Supreme Court concluded, with respect to this issue that

> ". . . no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

353 U.S. at 62.

The privilege of the State to withhold the identity of informers must give way "(W)here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused or is essential to a fair determination of a cause . . . ." *Id.* at 60-61. The Court noted two kinds of cases where the issue may arise. First, in those cases where probable cause to search without a warrant is based on the communications of an informant, the Government would be required to disclose the informant's identity unless there was sufficient independent evidence on which to base probable cause. *See, e.g., Scher v. United States*, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938). The second instance is where the informant participated in the crime, as in those cases where the accused is charged with selling narcotics to an informer. Such were the facts before the Court in *Roviaro*. The Court found that the informant was a material witness to the transaction for which the defendant was charged, and that the non-disclosure of his identity was erroneous.

In light of this decision, the federal courts have developed the general rule that where an informant is a participant or witness to the crime, his identity must be disclosed. Where he is neither, the privilege against disclosure operates. *See Hawkins v. Robinson*, 367 F.Supp. 1025 (D.Conn. 1973), and the cases cited therein.

In Indiana, general policy favors nondisclosure of informants' identities unless such disclosure is relevant and helpful to the defense or is necessary for a fair trial. *McCulley v. State* (1971), 257 Ind. 135, 272 N.E.2d 613. The burden is on the defendant to show a need for disclosure. *Lewandowski v. State* (1978), Ind. App., 374 N.E.2d 566, 568. Mills argues that the "informant" in this case is a material witness in that he participated in the controlled buys arranged by the Sheriff's Department, *Ortez v. State* (1975), 165 Ind.App. 678, 333 N.E.2d 838, and that as such Mills had a right to discovery of his identity under *Johns v. State* (1968), 250 Ind. 172, 240 N.E.2d 60, and *Bernard v. State* (1967), 248 Ind. 688, 230 N.E.2d 536. In those cases the Indiana Supreme Court established that criminal defendants have at least a limited right to pre-trial discovery, including the right to the names of witnesses who will be called to support the prosecution's case. In the present case, however, Mills was charged with possession of a controlled substance, not with its sale. The circumstances of the controlled buy were not a part of the prosecution's case against Mills, and therefore the identity of the informant or any testimony by him would be immaterial to the issue of Mill's guilt. Since the prosecution is not required to disclose nonmaterial evidence, Mill's reliance on *Johns* and *Bernard, supra,* is misplaced. *Ortez, supra,* at 841. The only aspect of the case to which the informant's identity might have relevance is the suppression issue. It is clear, however, that where the informant's credibility was not relied on in determining probable cause, his identity would not be of any use in challenging the validity of the warrant issued on the basis of that probable cause. *Collett v. State* (1975), 167 Ind.App. 185, 338 N.E.2d 286, 293. *See Scher v. United States, supra.* Thus, in the present case, the trial court correctly refused to compel disclosure of the informant's identity.

Mills next assigns as error the admission of paraphernalia found in the course of the search. It is his contention that no proper foundation was laid and no adequate chain of custody established. Before any evidence is admissible it must be relevant. In the case of "real" or "original" evidence, relevance depends on a showing that the item in question is indeed that item which was involved in the transaction the subject of trial, and that its condition is substantially unchanged in any material aspect. This may be accomplished by iden-

tification testimony at trial. *McCormick, Evidence* § 212, p. 527 (1972 ed.). See *Smith v. Crouse-Hinds Co.* (1978), 175 Ind.App. 679, 373 N.E.2d 923, 926-27, for a general discussion in the civil context. Proving chain of custody is an indirect method of authentication, since such proof serves to negate any substantial possibility of tampering, loss or mistake. *Johnson v. State* (1977), 267 Ind. 415, 370 N.E.2d 892, 894-95. These dangers are particularly great where the evidence is a fungible substance such as heroin, therefore proof of chain of custody has been held mandatory in those cases. *Graham v. State* (1970), 253 Ind. 525, 255 N.E.2d 652. We do not consider paraphernalia to be of a fungible nature in the sense that heroin is. However, the State chose to establish authenticity in this case by means of showing a chain of custody.

The record shows testimony of two officers to the effect that each had found syringes in specified places in the residence which he had delivered to the officer acting as evidence custodian. The evidence custodian testified that he himself found a cigar box in the kitchen containing paraphernalia, and that the officers who found the syringes placed these items in the box in his presence. He testified that no one other than these officers placed anything in the box. He further testified that he personally kept possession of the box, took it to his office at the jail, sealed it in an envelope and placed the sealed envelope in a safe until trial. He finally testified that the items were in substantially unaltered condition. We find this adequately accounts for the continuous whereabouts of the evidence from the time the State acquired possession until the trial. *Graham, supra.* Therefore, the evidence was properly admitted.

Mills' final contention is that the evidence establishing possession is insufficient to support the jury's verdict. The term "possession" contemplates either actual or constructive possession. *McGowan v. State* (1973), 156 Ind.App. 344, 296 N.E.2d 667. Mills' conviction is based on a finding of the latter.

Constructive possession is defined as "the intent and capability to maintain control and dominion" over the substance in question. *Thomas v. State* (1973), 260 Ind. 1, 291 N.E.2d 557, 558. Generally, a possessory interest in the premises where the item is found is sufficient to show capability to maintain control and domin-

ion, but such a finding may also be based on the practical ability to control. *See, e.g. Corrao v. State* (1972), 154 Ind.App. 525, 290 N.E.2d 484, 487 (both the owner and the driver were found to have control over the car in which a controlled substance was found). The requisite intent to possess entails knowledge of the presence and character of the substance in question. *Phillips v. State* (1974), 160 Ind.App. 647, 313 N.E.2d 101; *Thomas v. State, supra.* In this regard, a showing of exclusive control over the premises on which the substance is found is adequate to sustain a finding of knowing possession. Such exclusive control raises the inference that the owner had knowledge of the items' presence and character, since it was probably introduced onto the premises by his agency. *Phillips v. State, supra,* at 103; *Jones v. State* (1975), 163 Ind.App. 454, 324 N.E.2d 828. It is clear such knowledge may not be reasonably inferred where access to and control of the premises is non-exclusive. In *Ledcke v. State* (1973), 260 Ind. 382, 296 N.E.2d 412, it is explained that

> (N)ormally, without more, no "natural probative force" can be placed upon mere presence at a place where narcotics are found. One could just as easily be present innocently as guiltily. Although evidence of presence would certainly be relevant, it alone would not be sufficient to sustain a conviction.

296 N.E.2d at 418.

Therefore, the rule in cases of non-exclusive possession of premises on which narcotics are found is that such possession does not give rise to the inference of knowledge absent evidence of additional circumstances warranting it. *Johnson v. State* (1978), 176 Ind.App. 567, 376 N.E.2d 542, 543; *Martin v. State* (1978), 175 Ind.App. 503, 372 N.E.2d 1194, 1198; *Pettigrew v. State* (1975), 164 Ind.App. 297, 328 N.E.2d 236, 237; *Greely v. State* (1973), 158 Ind.App. 212, 301 N.E.2d 850, 852; *Corrao v. State* (1972), 154 Ind.App. 525, 290 N.E.2d 484, 487-88.

In determining on appeal the sufficiency of evidence, this Court will not weigh the evidence but rather will consider only that evidence most favorable to the judgment and all logical and reasonable inferences arising therefrom. If there is substantial evidence of probative value to support the verdict, the verdict will not be disturbed. *Burr v. State* (1977), 267 Ind. 75, 367 N.E.2d 1085; *Young v. State* (1977), 266 Ind. 557, 364 N.E.2d 1180; *Collins v. State* (1977), 266 Ind. 430, 364 N.E.2d 750.

The record before us discloses that on July 1, 1976, a search warrant for the residence of the Appellant, and the woman with whom he shared the residence, was executed. As the police officers approached the house, Mills came out the front door. The officers identified themselves and told Mills that they had a search warrant for his house. They then took the Appellant back into the house, "sat him on the couch inside the front door," read the warrant to him, and then conducted their search. The residence was described as a series of adjoining rooms not separated by doors or partitions, thus Mills could watch the progress of the search. A sack was found on the mantle over the fireplace, behind a picture which leaned against the wall. As an officer looked into the sack Mills was heard to say, not directing his comment to anyone in particular, something to the effect that it contained "dummy bags." The sack was found to contain aluminum foil bindles which, when field-tested, did not show the presence of heroin. When later tested in the police laboratory, the bindles were found to contain traces of an opium derivative. In addition to these bindles, the searchers found used syringes in plain view on the dresser in the bedroom, men's and women's clothing in the drawers of that dresser, two photographs of Mills found in the bedroom, a brown paper sack of unused syringes and a cigar box containing paraphernalia in the kitchen, and three bindles in the drawer of a small box found in the bedroom. Mills made no further comments as these items were discovered. The bindles were found to contain heroin.

The record, further, shows testimony of the woman with whom Mills shared the residence. She testified that they both were living there at the time the warrant was served, that they shared the bedroom, and that both kept their personal possessions there. Further, she testified that she didn't know either the paraphernalia or the heroin was there. She stated that she didn't know if Mills had placed the items there, just that she herself had not.

We find this evidence to be adequate to support each element of the State's case. Mills had possession of the premises and therefore the ability to exercise control over the items within. Because possession was shared with another, the requisite knowledge cannot be inferred from this alone. Considering in addition the evidence of Mills' knowledge of the dummy bindles and the woman's disclaimer of ownership of the

bindles containing heroin, however, the jury had an adequate basis to infer that Mills knew of the heroin's presence and character.

Finding no error in the above circumstances, we affirm the Appellant's conviction.

Lybrook, P.J. concurs (sitting by designation).

Robertson, J. concurs (sitting by designation).

NOTE—Reported at 379 N.E.2d 1023.