Steven R. PIER, Appellant-Defendant,

v.

STATE of Indiana, Appellee-Plaintiff.

No. 2–1079A331.

Court of Appeals of Indiana,
Fourth District.

Feb. 20, 1980.

James R. Fleming, Howard County Public Defender, Kokomo, for appellant-defendant.

Theo. L. Sendak, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CHIPMAN, Judge.

Defendant Steven Pier was found guilty by a jury of possession of marijuana in an amount in excess of thirty (30) grams.[1] On appeal, Pier challenges the sufficiency of the evidence to support his conviction.

Reversed.

The evidence most favorable to the State shows that on May 6, 1978, at approximately 8:00 p. m., defendant Pier was arrested on an unrelated assault and battery charge while standing in front of a duplex located at 1728 South Bell Street in Kokomo, Indiana. The defendant arrived at the duplex in an automobile with a female, later identified as "Mrs. Gray," and two children. Before being taken into custody, Pier requested he be allowed to take groceries to the house. The arresting officer obliged, and Pier entered the south apartment unit of the duplex with the groceries. When questioned by police, Pier stated his address was 1728 South Bell Street. Following his arrest, the defendant was transported to the Howard County Jail where he was incarcerated until May 19, 1978.

On May 8, 1978, two days after the defendant's arrest, Kokomo police returned to the duplex at 1728 South Bell Street at approximately 7:30 p. m. to search for a small baseball bat or wooden club allegedly

1. Ind.Code 35–48–4–11.

used in the assault and battery for which Pier was arrested. Police found the apartment occupied by Mrs. Gray and two children. The first floor of the apartment was composed of a kitchen, dining room, and an enclosed porch where children's toys and bunk beds were located. The second floor of the apartment had only one bedroom and a bathroom.

While searching the upstairs bedroom police discovered, on the floor of a bedroom closet, a cardboard box containing marijuana. The box was open and a green plant-like material covered the bottom of the box to a depth of approximately an inch and a half. Also inside the cardboard box police found a burlap sack which held three smaller plastic bags containing what appeared to be marijuana. In the closet, officers discovered women's dresses, women's jewelry, a box of wigs and a few men's shirts. A field test and subsequent laboratory analysis disclosed that one of the plastic bags found in the burlap sack contained 489 grams of marijuana. A small plastic bag containing a green plant-like material was found in a dresser located on the north wall of the bedroom. This dresser contained men's underwear and socks. Beside the dresser, in a brown paper sack, police found a small black box which contained "what appeared to be" marijuana residue and a man's ring. The police also discovered "what appeared to be" marijuana residue in a leather bag found in a cardboard box on the bedroom floor.

We preface our discussion of this case by noting defendant Pier was convicted of a Class D felony, i. e., possession of marijuana in excess of thirty (30) grams. The only evidence introduced by the State as to chemical analysis and weight of the substances found by the police related to the plant material found on the floor of the bedroom closet. A chemist testified a portion of this material was tested and found to be 489 grams of marijuana. Accordingly, in reviewing the evidence, we must find the State proved beyond reasonable doubt that Pier knowingly possessed the marijuana found in the closet.

Obviously, the evidence in this case is insufficient to prove actual possession. Therefore, if we are to uphold the defendant's conviction, we must find evidence which supports a conclusion that Pier constructively possessed the drugs in question.

■ Constructive possession requires the showing of an *intent* and *capability* to maintain control and dominion over the material in question. *Thomas v. State*, (1973) 260 Ind. 1, 291 N.E.2d 557; *Edwards v. State*, (1979) Ind.App., 385 N.E.2d 496; *Greely v. State*, (1973) 158 Ind.App. 212, 301 N.E.2d 850. The accused's capability to maintain control and dominion over the contraband is often established when the drug is found in a place under his dominion and control, e. g., a house, an apartment, or an automobile. Where the accused does not have exclusive dominion and control over the place where contraband is found, it may not be inferred that he knew of the presence of the drugs and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. *Edwards, supra; Martin v. State*, (1978) Ind.App., 372 N.E.2d 1194.

■ On appeal, Pier argues the State failed to establish he had either the capability to exercise dominion or control over the drugs in the closet, or that he knew of their presence. Pier directs our attention to the fact that, because of his arrest, he had been absent from the residence for almost two full days before the marijuana was found, during those two days there was no surveillance of the apartment to see who came and went, and there was also evidence the apartment was occupied by other persons. We hold the State failed to prove defendant Pier constructively possessed the marijuana found in the apartment's bedroom closet.

A common thread running through those Indiana decisions which have upheld a finding of constructive possession is in each case, the accused was present at the time and place where the contraband was discovered by law enforcement officers. *See e. g., Ledcke v. State*, (1973) 260 Ind. 382, 296 N.E.2d 412 (defendant present at house where drugs found in manufacturing set-

ting); *Thomas v. State, supra* (defendant seated at table on which heroin found); *Von Hauger v. State*, (1970) 254 Ind. 297, 258 N.E.2d 847 (defendant present in automobile where marijuana found); *Hutcherson v. State*, (1978) Ind.App., 381 N.E.2d 877 (defendant present in room where heroin found); *Mills v. State*, (1978) Ind.App., 379 N.E.2d 1023 (defendant at house where heroin found); *Cooper v. State*, (1976) Ind. App., 357 N.E.2d 260 (defendant present in automobile where heroin found); *Cannon v. State*, (1975) Ind.App., 335 N.E.2d 229 (defendant present in vacant apartment where drugs displayed); *Jones v. State*, (1975) 163 Ind.App. 454, 324 N.E.2d 828 (defendant present in apartment where heroin found); *Thurman v. State*, (1974) Ind.App., 319 N.E.2d 151 (packets of heroin found under pillow upon which defendant was sleeping); *Phillips v. State*, (1974) 160 Ind.App. 647, 313 N.E.2d 101 (heroin found in back seat of squad car which defendant had just exited); *Ludlow v. State*, (1973) Ind.App., 302 N.E.2d 838, *rev'd on other grounds*, (1974) Ind., 314 N.E.2d 750 (defendant present in rear bedroom of house where drugs found). Indeed, the accused's presence at the scene tends to establish he has the capability of maintaining control and dominion over the contraband.

In the present case, however, we are faced with a situation in which, although the evidence establishes the defendant resided at the apartment where marijuana was found, the evidence clearly shows the accused was absent from the premises for forty-eight hours prior to the time the marijuana was discovered, and other persons had access to the apartment during the interim. This combination of facts, i. e., the accused's absence from the dwelling coupled with another's access to the area where drugs are found, lead the Second District to reverse the conviction of James Martin in *Martin v. State, supra.* Judge Sullivan wrote:

> Although there is evidence that James Martin had clothes hanging in the master bedroom, we do not know where. There is no evidence that any of his belongings were in the bureau drawer where the drugs were found or elsewhere about the bureau. *James Martin, moreover, was not at the apartment when the police officers arrived. We do not know when he was last there, apart from his testimony that he stayed at the apartment "off and on" but was not there on the day of the search prior to his arrival.* However, the evidence does show that while James Martin was away, the houseguest had access, for some time at least, to the master bedroom. [emphasis added]

372 N.E.2d at 1199. The accused's absence from the premises where contraband is found has also been considered by courts in other jurisdictions. In *Osburn v. State*, (1972) Okl.Cr., 497 P.2d 471, police entered the defendant's apartment at 4:30 p. m. and discovered marijuana and drug related paraphernalia; however, Osburn was not present when the apartment was searched, but arrived some forty minutes later after having been absent from the premises since early morning. While the search was in progress, two other individuals arrived at the apartment and told police they lived there. Although the apartment was rented to Osburn, the evidence showed numerous friends of the defendant frequented the apartment, including friends who slept there on the night before the search. The court held the evidence was insufficient to prove Osburn's dominion and control over the marijuana found in the apartment or his knowledge of its presence.

In a similar case, *Griffin v. State*, (1973) Fla.App., 276 So.2d 191, police discovered a bag of marijuana lying in plain sight on top of a stereo console just inside the front door of Griffin's home. Other small amounts of marijuana were found about the house along with a capsule of LSD located in a desk drawer. Griffin, however, was not present when the police arrived at the scene. A police officer testified he had surveilled the premises in question for approximately seven days before the night of the raid, and had seen Griffin at the premises several times, but had also seen numerous other people enter the house. Holding the State failed to present sufficient evi-

dence to prove Griffin knew of the presence of the narcotics in his premises at the time they were discovered by the arresting officers, the court stated:

To reiterate, the state failed to prove when the defendant was last in the premises prior to the time of the raid, but did prove that the premises had been occupied by numerous other persons during the seven days prior to the raid.

276 So.2d at 193. Other courts have also found the accused's absence from the premises where drugs are discovered, coupled with the fact that other individuals had access to the premises, precludes a conviction for knowing possession of contraband found therein. *See, e. g., People v. Antista,* (1954) 129 Cal.App.2d 47, 276 P.2d 177; *Moreland v. State,* (1975) 133 Ga.App. 723, 212 S.E.2d 866; *People v. Wolski,* (1975) 27 Ill.App.3d 526, 327 N.E.2d 308; *People v. Schriber,* (1970) 34 A.D.2d 852, 310 N.Y.S.2d 551, *aff'd* 29 N.Y.2d 780, 327 N.Y.S.2d 68, 277 N.E.2d 187.

In the present case, we need not hazard a guess as to when defendant Pier was last present at his apartment prior to the time the marijuana was discovered. He was arrested on May 6 at approximately 8:00 p. m. However, the evidence shows on that day he was only present long enough to carry groceries into the apartment immediately before being taken into custody. Following his arrest, two days elapsed before marijuana was found in the apartment's bedroom closet, during which time the house had not been under surveillance. At the time the drugs were discovered, the apartment was occupied by Mrs. Gray. The closet where the marijuana was found contained women's clothing and jewelry in addition to a couple of men's shirts. Gray quite clearly had access to the apartment and the closet at the time the search was conducted. Obviously, defendant Pier did not. We are wholly unpersuaded by the State's argument that the condition of the marijuana found in the closet, specifically, the fact the plant material was spread out over the bottom of the cardboard box, shows the drugs had been there for "some time," and negates the possibility the marijuana was brought in by another person during the two days defendant Pier was incarcerated. Nor do we believe defendant Pier's possession of the marijuana found in the bedroom closet is established by the fact other substances which "appeared" to be marijuana or marijuana residue were discovered in other areas of the bedroom.

Had the defendant been present at the apartment when the police arrived to execute their search warrant, we would have no problem upholding his conviction for possession. However, because Pier was absent from the premises for *at least* forty-eight hours prior to the time drugs were found, and because the evidence demonstrates *at least* one other individual had unfettered access, dominion and control over the premises during that period, we have no choice but to hold the State failed to present sufficient evidence to support a finding beyond reasonable doubt that Pier had the intent and capability to maintain control over the drugs found in the apartment bedroom closet.

Accordingly, the defendant's conviction is vacated and the trial court is ordered to enter a judgment of acquittal.

MILLER, P. J., and YOUNG, J., concur.