**James PARSON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 2–380A68.

Court of Appeals of Indiana, Second District.

March 1, 1982.

John T. Davis, Preston T. Breunig, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant James Parson (Parson) appeals his convictions for carrying an unlicensed handgun in a vehicle and possession of heroin having an aggregate weight of less than ten grams, challenging the sufficiency of the evidence.

We affirm.

## FACTS

The facts most favorable to the State disclose that on the morning of April 27, 1976, warrants were issued to Indianapolis police officers for the purpose of searching Parson's house and leased motor home for heroin. At 3:00 P.M. the officers arrived at Parson's home, located at 4214 North Edmondson in Indianapolis: It was unlighted and neither the motor home nor any other vehicle was present. The officers kept the home under constant surveillance. No officer testified as to having seen anyone approach until 8:00 P.M. when Parson, unaccompanied by any passengers, arrived in the leased motor home. At trial Parson indicated that he had last been home at approximately 9:00 P.M. the previous night, April 26. He said that others had access to the home during his absence, including his brother, who returned Parson's dog to the house at 4:00 P.M. on April 27. However, the officers keeping watch over Parson's house observed no visitors from 3:00 P.M. to 8:00 P.M. on April 27. Parson also testified that his wife, with whom he shared the house, was out of town during the entire period in question.

Upon Parson's arrival, the officers executed the warrants. Commencing their search inside the motor home, they seized a loaded thirty-eight caliber Colt revolver from a compartment above the driver's seat. Connie Morris, recordkeeper for the Indiana State Police Firearms Licensing Section, testified at trial that Parson did not have a license to carry the weapon.

The investigation was continued outdoors. In a fenced-in area behind Parson's house was his "big guard dog... about the size of a Shepherd ...." *Record* at 200. At trial, Parson indicated that the animal was a bouvier des flandres, defined in Webster's New International Dictionary 261 (3d ed. 1976) as "a breed of large powerfully built rough-coated dogs ... used especially for herding and in guard and police work ...." The officers, reluctant to handle the animal, asked Parson to remove it from the area. He did so. The officers then searched the area. Underneath the aluminum siding on the rear of Parson's house— within the area enclosed by the fence and previously occupied by the guard dog—the officers discovered three tin foil packets. Chemical analysis indicated that one packet contained 2.96 grams of heroin. The others held a total of 7.7 grams of heroin "mix"— quinine, procaine, and methapyrilene—and, possibly, a minute quantity of heroin.

The jury trial ended in convictions for carrying an unlicensed handgun in a vehicle

and possession of heroin, from which convictions Parson appeals.

## ISSUE

Parson raises a single issue:

Was the evidence sufficient to support his convictions?

## DECISION

### A. THE CONVICTION FOR CARRYING AN UNLICENSED HANDGUN IN A VEHICLE

PARTIES' CONTENTIONS—Parson claims that the evidence adduced at trial was insufficient to prove the element of possession. The State responds that the evidence was adequate to establish Parson's constructive possession of the unlicensed handgun seized from the motor home.

CONCLUSION—The evidence was sufficient to support Parson's conviction for carrying an unlicensed handgun in a vehicle.

As always, in reviewing the sufficiency of the evidence, we neither weigh the evidence nor judge the credibility of witnesses. We examine only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. When there is substantial evidence of probative value supporting the verdict, the conviction will not be set aside. *Jones v. State*, (1978) 268 Ind. 640, 377 N.E.2d 1349; *Johnson v. State*, (1981) Ind.App., 419 N.E.2d 232.

The parties correctly acknowledge that proof of constructive possession is sufficient to establish an accused's possession of contraband. *Watt v. State*, (1980) Ind.App., 412 N.E.2d 90; *Mills v. State*, (1978) Ind. App., 379 N.E.2d 1023. Our supreme court has defined constructive possession as "an intent and capability to maintain control and dominion" over contraband. *Thomas v. State*, (1973) 260 Ind. 1, 4, 291 N.E.2d 557, 558. *Accord, Watt, supra; Mills, supra.* Proof of a possessory interest in the premises in which contraband is found is adequate to show the *capability* to maintain control and dominion over the item in question. *Watt, supra; Hutcherson v. State*, (1978)

Ind.App., 381 N.E.2d 877; *Mills, supra.* And *intent* to maintain control and dominion, which is demonstrated by evidence of the accused's knowledge of the nature of the contraband and its presence, may be inferred when possession of the premises is exclusive. *Watt, supra; Mills, supra.*

Parson's status as lessee of the motor home from which the handgun was seized conferred upon him a sufficient possessory interest to show the capability to maintain control and dominion over the weapon. Furthermore, the evidence is undisputed that Parson was the driver and sole occupant of the vehicle. So despite Parson's testimony that another person had access to the vehicle earlier, the jury could reasonably conclude that the motor home had been reduced to Parson's exclusive possession for longer than a brief period of time before the search, thereby supporting the inference that Parson had the requisite intent to maintain control and dominion over the handgun.

### B. THE CONVICTION FOR POSSESSION OF HEROIN

PARTIES' CONTENTIONS—Parson also assails the evidence as being insufficient to prove that he was in possession of the heroin, the State responding that there was ample evidence of constructive possession.

CONCLUSION—The evidence was sufficient to support Parson's conviction for possession of heroin having an aggregate weight of less than ten grams.

As discussed above, the requisite intent to maintain control and dominion over contraband may be inferred when possession of the premises in which it is found is exclusive. *Watt, supra; Mills, supra.* When, however, possession of the premises is not exclusive, the inference of intent must be supported by additional circumstances pointing to an accused's knowledge of the nature of the contraband and its presence. *Watt, supra; Hutcherson, supra; Martin v. State*, (1978) Ind.App., 372 N.E.2d 1194.

■ That Parson had a possessory interest in the premises sufficient to show his capability to maintain control and dominion over the heroin is beyond dispute. *Watt, supra; Hutcherson, supra; Mills, supra.* But any conclusion that Parson's possession of the premises was exclusive is precluded by his testimony—albeit uncorroborated—that during his absence before the heroin was found, others had access to the house. Consequently, additional indicia of Parson's knowledge of the nature of the substance and its presence are necessary to buttress an inference of intent on his part. *Watt, supra; Hutcherson, supra; Martin, supra.*

The presence of a "manufacturing type setting" is an additional circumstance which will support an inference of intent in a non-exclusive possession case. *Ledcke v. State,* (1973) 260 Ind. 382, 389, 296 N.E.2d 412, 417. *See also Mills, supra.* Here, several packets of heroin "mix" were found in proximity to the packet of heroin, thereby supporting an inference closely akin to that permissible in a manufacturing or processing setting.

The jury could also reasonably have inferred that, like the Greek mythological dog Cerberus guarding the entrance to the lower world, Parson's German shepherd-sized dog was placed by him in the fenced-in area surrounding that part of the house where the heroin was found to protect the heroin secreted under the siding. Four armed police officers were reluctant to remove this animal from its habitat; Parson was called upon to do so.

*Pier v. State,* (1980) Ind.App., 400 N.E.2d 209, is distinguishable. In that case, a conviction for possession of marijuana was reversed by this court because the evidence was insufficient to establish the element of constructive possession. Pier had been incarcerated following his arrest for assault and battery. Some forty-eight hours later, while Pier remained in jail, police officers went to Pier's residence to search for a club allegedly used during the assault and battery. Present were a woman and two children with whom Pier shared the apartment. While conducting their search for the weapon, police seized a quantity of marijuana. This court, in reversing Pier's conviction for possession, commented that a "common thread" running through Indiana decisions upholding findings of constructive possession was the presence of the defendant when the contraband was found. *Id.* at 210. The court also observed that "the evidence *clearly* shows the accused was absent from the premises for forty-eight hours prior to the time the marijuana was discovered, and other persons had access to the apartment during the interim." *Id.* at 211 (emphasis supplied).

The circumstances of this case are entirely different from those presented in *Pier.* Parson, although absent when the police arrived to execute their search warrant *for heroin,* was present when the heroin was seized. Moreover, there was only Parson's uncorroborated testimony to establish that he had been away during the twenty-three hours preceding execution of the warrants and that others might have entered the house during his absence. The police, who kept constant surveillance over the house from 3:00 P.M. until 8:00 P.M., did not testify that anyone entered—despite Parson's testimony that his brother brought Parson's dog to the house at 4:00 P.M. This is a far cry from the *clear* evidence of absence and access relied on by the *Pier* court. Bearing in mind that it is for the jury to judge the credibility of witnesses, *Jones, supra; Johnson, supra,* we can only conclude that the evidence was adequate to support Parson's conviction for possession of heroin.

Affirmed.

SULLIVAN, J. concurs.

SHIELDS, J. dissents with opinion.

SHIELDS, Judge, dissenting.

I concur in the majority's affirmance of Parson's conviction for carrying an unlicensed handgun in a vehicle. However, unlike the majority, I find the evidence insufficient to support the conviction for possession of heroin.

Criminal possession of contraband may be established by proof of actual or constructive possession. *Watt v. State*, (1980) Ind. App., 412 N.E.2d 90. Constructive possession requires a showing of intent and capability to maintain control and dominion over the material in question. *Thomas v. State*, (1973) 260 Ind. 1, 291 N.E.2d 557. Proof of a possessory interest in the premises in which the item is found is adequate to establish the ability to maintain control and dominion over the substance. *Watt*, 412 N.E.2d at 98. Intent, on the other hand, may be proved by evidence of accused's knowledge of the presence and nature of the substance. It may be inferred from exclusive possession of the premises. However, where possession is not exclusive, mere presence is insufficient and there must be buttressing evidence of additional circumstances which provide the indicia of knowledge. Additional factors present in nonexclusive possession situations which have been held sufficient to link the accused with the substance in question include: *Thomas*, (defendant seated near table where narcotics were found in open view); *Ledcke v. State*, (1973) 260 Ind. 382, 296 N.E.2d 412 (drugs in manufacturing setting and defendant's attempted flight); *Griffin v. State*, (1972) 259 Ind. 205, 285 N.E.2d 644 (defendant admitted owning narcotics); *Watt*, (close proximity of defendant's clothing to contraband); *Hutcherson v. State*, (1978) Ind.App., 381 N.E.2d 877, *reh. den.* (1978) 382 N.E.2d 983 (defendants attempted flight); *Mills v. State*, (1978) Ind.App., 379 N.E.2d 1023 (incriminating paraphernalia linked to defendant); *Moss v. State*, (1975) 165 Ind.App. 502, 333 N.E.2d 141, 335 N.E.2d 633 (furtive gestures).

The search of Parson's residence revealed 2.96 grams of heroin hidden beneath the exterior siding at the rear of the house. Parson did not have exclusive possession of the house. Nor did he have exclusive possession of the exterior of the dwelling. While the evidence of joint occupancy supports the inference Parson was in control of the house and its exterior, it does not support an inference he had knowledge of the presence of the contraband. *Greely v. State*, (1973) 158 Ind.App. 212, 301 N.E.2d 850. Additional indicia of knowledge is necessary but not found in this record.

The majority correctly asserts the accused's knowledge of the presence and nature of the narcotics may be inferred in a manufacturing situation even where the accused is not a tenant of the premises. *Ledcke.* It is nevertheless mistaken in concluding the small packets of mix retrieved with the heroin supports such an inference. As Judge Buchanan stated in *Watt*, the inference is premised on the notion illegal manufacturing activity is so obvious and visible as to support the presumption an occupant of the house had the requisite knowledge. 412 N.E.2d at 99. Absent the clearly visible nature of an illegal manufacturing setting, it is unreasonable to assume a meagre seven grams of mix secreted in small tinfoil packets hidden beneath the sideboarding with the narcotics is a manufacturing situation. Therefore, I disagree with the majority in its determination the small quantity of heroin mix constituted evidence sufficient to support an inference of knowing possession. Had voluminous quantities of the mix been discovered, or if the mix had been found in plain view on the premises, it is possible the evidence would warrant a different conclusion.

I further disagree the presence of Parson's dog in the backyard tends to connect him with the narcotics. The majority places great emphasis on the so-called reluctance of the officers to remove the dog without Parson's assistance from its position within the fence at the rear of the residence. A careful examination of the record, however, reveals no testimony concerning the dog's temperament or its propensity to limit accessibility to the area where the drugs were discovered. Admittedly, one of the officers referred to the dog as a "big guard dog ... about the size of a Shepard [sic] ...." That same officer, it should be noted, also characterized the dog as being merely an "overgrown poodle."

Moreover, no evidence was adduced at trial concerning the proximity of the dog to

the narcotics. Both, of course, were found at the rear of the premises. The mere presence of a dog in the backyard, however, is insufficient to link Parson with the narcotics. Further, the dog was not continuously in the backyard during Parson's absence. It was at the kennel at least a portion of the time. Consequently, any inference Parson placed the dog at the rear of the house to prevent outsiders from gaining access to the drugs is premised on pure suspicion and speculation.

Finally, Parson was returning from an overnight trip to St. Louis when the search was executed. The search commenced immediately upon his arrival; thus he had not even the slightest opportunity to approach the house. This inability to reach the residence after an absence of nearly 24 hours rendered such search analagous to one done in his absence. While Parson had been away he claims his brother returned the dog from the kennel at about 4 p. m. and therefore had unfettered access to the premises. Although this assertion was uncorroborated, it was also uncontradicted. Police officers did maintain surveillance outside the residence between 3 p. m. and 8 p. m.; however, contrary to the majority's statement, not a single officer testified as to what transpired at the house during this time. In *Pier v. State*, (1980) Ind.App., 400 N.E.2d 209, this court unequivocally held an accused's absence from the premises, coupled with possible access of others, precludes a conviction of knowing possession of contraband.

I conclude the state failed to introduce sufficient evidence from which a fact finder could reasonably infer Parson knowingly possessed the heroin. The evidence admittedly raises an aura of suspicion of guilt, but such evidence is insufficient to sustain the conviction. *Dunn v. State*, (1973) 260 Ind. 142, 293 N.E.2d 32. Therefore, I dissent from the majority opinion affirming Parson's conviction for possession of heroin.