Marvin HUTCHERSON, Appellant,

v.

STATE of Indiana, Appellee.

Nos. 2-1076A384, 479S106.

Supreme Court of Indiana.

April 20, 1979.

Lawrence O. Sells, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice, dissenting.

I dissent to the denial of transfer in this case.

Appellant was charged with possession of 10.98 grams of heroin in violation of Ind. Code § 35–24.1–4.1–6 (Burns 1975) which provides as follows:

"(a) A person is guilty of possession of a controlled narcotic substance, if, without a valid prescription or order of a practitioner acting in the course of his professional practice, or except as otherwise authorized by this article [35–24.1–1–1—35–24.1–6–1c], the person knowingly possesses a controlled substance classified on schedule I or II which is a narcotic drug.

(b) *Possession of a controlled narcotic substance is a felony* punishable by a determinate term of imprisonment of not less than five (5) years nor more than twenty (20) years and a fine not to exceed five-thousand ($5,000) dollars, *if the amount of the controlled narcotic substance involved is an aggregate weight of ten (10) grams or more,* or if the person has previously been convicted of a felony, other than unauthorized possession of marijuana, involving a schedule I or II controlled substance which is a narcotic drug. Otherwise possession of a controlled narcotic substance is a felony punishable by a determinate term of imprisonment of not less than two (2) years nor more than (10) years and a fine not to exceed one-thousand ($1,000) dollars."

(Emphasis supplied.) The Court of Appeals agreed with appellant's position that the italicized portion of the above statute must be construed as referring to narcotics in their pure form rather than in combination with other substances. *Hutcherson v. State,* (1978) Ind.App., 381 N.E.2d 877. Thus, a person may not be found criminally liable under the statute unless he possesses ten or more grams of a pure controlled substance. The State argued that what the legislature intended by the words "aggregate weight" was to proscribe the possession of ten or more grams of a substance containing a controlled narcotic. Under the State's view, the crucial weight of a substance possessed by a defendant would be the aggregate or total weight of the pure narcotic, along with the mixers and carriers

with which it is normally found in its "street" or usable form. As I believe the State's position to be more consistent with the legislature's intent, I would vote to grant transfer and vacate the opinion of the Court of Appeals on this issue.

Appellant Hutcherson's ·conviction rested upon his constructive possession of an amount of heroin found in a cigarette package. At trial, a police chemist, Robert McCurdy testified that the total weight of the powder contained in the cigarette package was 10.98 grams. He further testified that based upon the results of a series of tests performed on the powder and on his experience in over 200 narcotics cases, it was his opinion that the powder contained heroin. The following testimony by Mr. McCurdy is also helpful in ascertaining the legislature's intent in using the words "aggregate weight":

### Direct Examination

"Q. All right, with respect to the powder that you weighed, what weight was that?

A. The total weight was ten, point, nine, eight (10.98) grams.

Q. All right, is that the same as aggregate weight?

A. Yes sir, that would be the aggregate weight.

Q. All right, and was there heroin in that brown powder?

A. Yes sir, there was heroin in the powder.

### Cross Examination

"Q. So, now isn't it true, Mr. McCurdy, in your experience there in the police lab, in your 200 so-called examinations, that there is a higher degree of heroin—it's mixed with something else usually, isn't it?

A. Yes sir, it is.

Q. And there is more pure heroin in some cases than in others, is that correct?

A. That's correct.

Q. And have you seen a percentage of heroin in a mixture lower than twenty percent?

A. Yes, I have.

Q. And have you seen a mixture lower than ten percent?

A. Yes sir.

Q. So, what you're saying, if a volume of material weighs 10.98 grams, you're not telling this jury that's all heroin?

A. No sir, I'm not.

Q. And since you didn't run a quantitative analysis, you can't tell them what the percentage is, is that correct?

A. That's correct.

Q. So it could be less than ten percent, is that correct?

A. Yes.

Q. And so, if that's the case, then there is not ten grams of heroin present in the pack, but we don't know that one way or the other, do we?

A. I would say I do know that there is not ten grams.

Q. Now what do they frequently cut heroin with, milk sugar, it is called milk sugar?

A. Lactose.

### Redirect Examination

"Q. Mr. McCurdy, in your experience as a chemical analyst for the police department, have you ever seen pure heroin brought in off the street?

A. I've seen  .   .   .   .

Q. One hundred percent pure heroin?

A. No, I have not.

Q. And in what quantity of heroin do you normally analyze, of those two hundred cases what would you say would be the average quantity of powder suspected to be heroin?

A. The average size of the powder found .   .   .

Q. Yes.

A.  .   .   .   in those cases?  I would say around one gram.

Q. And what did you find in this instance?

A. Weight?

Q. Yes.

A. 10.98 grams.

*Recross Examination*

"Q. But whether it's one gram or ten grams, it's still not a hundred percent pure heroin?

A. That's correct."

I think it is clear that the legislature, in referring to the aggregate weight of a controlled substance, intended to refer to the substance as sold and used on the streets which includes a percentage of pure drug combined with mixers and carriers. This does not appear to be an unreasonable interpretation of the statutory language as it is commonly known that when we refer to dosages of medicinal drugs we are rarely speaking of a pure drug but rather, are referring to a percentage of pure drug along with its mixers and carriers. To require the State, in each case involving a violation of the Controlled Substances Act, to qualitatively analyze the seized substance to find its ingredients and then to quantitatively analyze it so as to find the amount of pure narcotic, will place an undue burden upon law enforcement officials and requires a strained interpretation of the subject legislation. In fact, it is probably highly debatable among chemical experts, as to when a substance can ever be said to have been separated from a mixture to such an extent that it can be called "pure." In any event, I am confident that the societal mischief which the legislature was attempting to remedy through its enactment of Ind.Code § 35–24.1–4.1–6(b), was the unauthorized possession of ten or more grams of a controlled substance in the form in which it is commonly found.

Similar issues have been decided by other jurisdictions and while their decisions are not totally supportive of the position I have taken here, neither are they inconsistent. For example, a New York statute provides for an enhanced penalty for defendants convicted of selling a preparation, compound, mixture or substance of an aggregate weight of one or more ounces containing a narcotic drug. Penal Law § 220.43 (McKinney Supp.1979). The words "aggregate weight" were construed as meaning that "pure narcotics may be combined with other uncontrolled substances to reach an 'aggregate weight'." *People v. Brannon*, (App.Div.1977) 58 A.D.2d 34, 43, 394 N.Y. S.2d 974, 981. Similarly, in *State v. Land*, (N.J.1977) 73 N.J. 24, 372 A.2d 297, 304, it was held that a defendant could be convicted of possessing over 25 grams of marijuana notwithstanding the fact that a portion of the total weight of the substance was attributable to non-narcotic stalks and sterilized seeds. The non-narcotic ingredients were found to be covered by the statutory phrase, "adulterants or dilutents," which were includable in the aggregate weight.

Although the language of Ind.Code § 35–24.1–4.1–6 (Burns 1975) is not as comprehensive as the language of the New York and New Jersey statutes discussed above, I think our legislature intended, through its enactment, to reach those who would possess a substance of an aggregate weight of ten or more grams which contains a controlled narcotic. As the opinion by the Court of Appeals would frustrate that intention, I would grant transfer and vacate their opinion.

GIVAN, C. J., concurs.