Harry **FERGUSON**, Appellant (Petitioner Below),

v.

**STATE** of Indiana, Appellee (Respondent Below).

No. 4–1184A316.

Court of Appeals of Indiana, Fourth District.

Aug. 5, 1985.

Rehearing Denied Sept. 30, 1985.

---

**4.** I.C. 35–4.1–1–3(d).

Susan K. Carpenter, Public Defender, Rick Ranucci, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

MILLER, Presiding Judge.

In a bench trial held March 16, 1977, the petitioner-appellant, Harry Ferguson, was convicted of possession of less than ten grams of heroin, a Class D felony. *See* IND.CODE § 35–24.1–4.1–6 (1976) (repealed 1977; presently encoded as amended at IND.CODE § 35–48–4–6 (Supp.1983)). On March 26, 1982, Ferguson's petition for permission to file a belated motion to correct error was granted pursuant to Ind. Rules of Procedure for Post-Conviction Remedies, Rule 2. From the denial of his belated motion, Ferguson brings this appeal, raising the following issues:

I.   Whether the evidence was sufficient to support the conclusion that Ferguson was in constructive possession of heroin?

II.  Whether Ferguson was denied effective assistance of trial counsel in violation of the sixth amendment to the United States Constitution?

We reverse on the sufficiency issue and, therefore, we need not address Ferguson's second allegation of error.

## FACTS

At 8:00 on the evening of November 11, 1976, Detective James Wurz, Sergeant Thomas Casey and five other officers of the narcotics branch of the Indianapolis Police Department arrived at 2606 North College Avenue to execute a search warrant. The building at that address, known as the Sutherland Hotel, was located on the west side of the avenue facing east. The front, or eastern, portion of the building (the hotel) consisted of a lobby and five single hotel rooms on two floors, which were let at hourly rates. In the rear, or western, portion of the building was a three-room apartment (the apartment) with access through a single doorway to a basement. The search warrant to be executed that evening authorized a search of the rear apartment portion of the building and of the persons of James Williams and Curtis Burhannon, Jr., who were described in the warrant as being in control of the apartment. The search warrant was issued on the basis of information received from a reliable informant that heroin was being sold from the apartment.

Upon arrival at the Sutherland, Det. Wurz went to the southwest corner of the building, where the only entrance to the apartment was located. Sgt. Casey was stationed on the west side of the building where he could see into the apartment through a window. Det. Wurz knocked on the door several times, announcing that he was a police officer. After several knocks, Det. Wurz heard Sgt. Casey yell that someone was running through the apartment. From his vantage point, Sgt. Casey observed a man wearing a maroon long-sleeved shirt and black trousers run past the window and into the bathroom, where the subject remained for three to four seconds before running back past the window and disappearing through a doorway. Sgt. Casey ordered two officers in his charge to the front of the hotel to ensure that no one entered or left the premises.

When Det. Wurz heard Sgt. Casey's report that someone was running through the apartment, he tried to force open the door but was unable to do so. The narcotics officers required eight to ten minutes to gain entry into the apartment by battering a hole in the wall next to the door with a sledgehammer, allowing them to remove two two-by-fours that were in position to barricade the door. Immediately upon entering the apartment, Det. Wurz went through the door through which the subject in the apartment was seen running, and Wurz found that it led to a basement.

Det. Wurz and other officers made an extensive search of the basement but found no one. The inspection of the basement, however, revealed that the only doorway into the basement was the one that led from the rear apartment, but also that a cold air duct, of the sort used with old furnaces, ran from the basement up to one of the single rooms on the first floor of the hotel. On the basement floor, one and one-half to two feet north of the opening to the cold air duct, Det. Wurz discovered a tinfoil packet containing a powdery substance that laboratory analysis later determined to be heroin. The basement floor was very dusty, but the tinfoil packet was not covered with dust. There was also dust covering the cold air duct except for a place on the side where it appeared a hand had been dragged across the duct.

Det. Wurz climbed up through the cold air duct into the first floor hotel room where it led. Finding nothing in that room, Det. Wurz spoke with a man in the hotel, then went to the second floor of the hotel and began knocking on the doors of the rooms. The appellant, Ferguson, answered the first door on which Det. Wurz knocked, wearing a maroon long-sleeved shirt and black trousers, which had dirt on them that Det. Wurz testified "matched the dirt that was on the furnace pipes where it led up, you know, through the register there." (R. 150)

Meanwhile, Sgt. Casey went to the front of the hotel to ask the officers stationed there whether anyone had left the building. He then went into the hotel lobby to ask some people sitting there whether they had seen anyone come through the lobby, and they said they had not. After checking the first floor hotel room to which the cold air duct was connected, Sgt. Casey heard Det. Wurz talking with Ferguson upstairs. Sgt. Casey went up and identified Ferguson as the man he had seen running through the rear apartment earlier that evening. Ferguson was then placed under arrest, and the room he had occupied was searched, but no contraband was discovered. Further search of the hotel revealed an occupant in the room directly across from that in which Ferguson was found and the hotel manager, Jack Williams,[1] together with two females, in another hotel room.

After Ferguson's arrest, Det. Wurz returned to the rear apartment to conduct the search authorized by the warrant. On the bathroom floor, the detective found several bits of tinfoil. On a dresser in the bedroom, he discovered a piece of a brown paper bag with writing on it that Det. Wurz described as "narcotics language." A police department handwriting analyst compared the writing on the brown paper with writings taken from Ferguson's person, but there was no evidence Ferguson had written the narcotics language on the paper bag. A shotgun, a denim jacket, some 7-Up bottles, a jar and a walkie-talkie were also discovered in the apartment. Outside a window located on the north side of the apartment, narcotics officers found a small pill, some matches and a bottle cap with burn marks on the bottom of it.

At the time of his arrest, Ferguson was advised of his rights and asked his address, which he gave as 2606 North College Avenue (the Sutherland Hotel). He also denied having been in the rear apartment portion of the hotel building that night. At trial, Ferguson again denied having been in the apartment or the basement on the night of his arrest. He stated that, on that date, he

---

1. The evidence is inconclusive regarding whether the hotel manager, Jack Williams, was the same man as the James Williams described in the search warrant as having joint control of the rear apartment. Although defense counsel, in his cross-examination of Det. Wurz, repeatedly referred to the man named in the search warrant as "Mr. James Jack Williams," (R. 164, 165), the warrant clearly names only "James Williams" and "Curtis Burhannon, Jr." (R. 142). In his testimony, Ferguson never used any name but Jack Williams when referring to the hotel manager, and he stated he did not know who was living in the rear apartment on the date of his arrest. Ferguson also stated he borrowed a jacket from Jack Williams, the hotel manager, to wear to jail, so he obviously was familiar with that man. The most reasonable inference from this evidence is that the James Williams described in the search warrant and Jack Williams, the hotel manager, were not the same person.

had been employed at the Sutherland Hotel for approximately two months as a janitor whose duties included cleaning the hotel rooms and changing the linen on the beds. The work apparently was sporadic and part-time, but when his job required him to be at the hotel overnight, he was allowed to sleep in one of the hotel rooms (usually the one in which Det. Wurz found him) as he had planned to do on the night of his arrest. Occasionally Ferguson paid rent to sleep at the hotel, but he testified that he had another residence at 2802 North Eastern Avenue and that he had given that address, in addition to the Sutherland Hotel, to Det. Wurz when questioned at the time of his arrest. Finally, Ferguson testified that Jack Williams was the hotel manager at the time of his arrest and that Mr. Williams was in control of the premises on that date.

I.

Ferguson contends the evidence was insufficient to prove beyond a reasonable doubt that he was guilty of possession of the heroin found on the basement floor.

"Our standard for reviewing sufficiency claims is firmly established; on appeal the reviewing court does not weigh the evidence or judge credibility. We consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Walton v. State,* (1980) Ind. [272 Ind. 398], 398 N.E.2d 667; *Wofford v. State,* (1979) Ind. [271 Ind. 518], 394 N.E.2d 100; *Poindexter v. State,* (1978) 268 Ind. 167, 374 N.E.2d 509. The triers of fact may draw reasonable inferences from facts established either by direct or circumstantial evidence, and a guilty verdict may be based solely upon circumstantial evidence. *Harris v. State,* (1981) Ind., 425 N.E.2d 112; *Webster v. State,* (1978) Ind. [270 Ind. 145], 383 N.E.2d 328."

*Rowan v. State* (1982), Ind., 431 N.E.2d 805, 811.

Because Ferguson was not found to have been in actual possession of any contraband, the parties agree that if the conviction is to be sustained, the evidence must be sufficient to prove Ferguson had constructive possession of the heroin. Constructive possession is proven where there is evidence to show the defendant had the intent to exercise control over the contraband and the capability to do so. *E.g., Thomas v. State* (1973), 260 Ind. 1, 291 N.E.2d 557; *Martin v. State* (1978), 175 Ind.App. 503, 372 N.E.2d 1194. Where the defendant is shown to have had exclusive control over the premises where an illegal substance is discovered, the trier of fact may infer that the defendant have the requisite intent and capability to exercise control over any contraband found on those premises. *Craig v. State* (1980), Ind.App., 403 N.E.2d 925; *Martin v. State, supra.* Such control must be exclusive both in the sense of having exclusive legal authority over the premises—as where the defendant is the sole owner or tenant of a residence where contraband is discovered—and in the sense of having the exclusive practical ability to exercise control over the contraband—as where the defendant is the only person to have access to the place where an illegal substance is discovered. *See Craig v. State, supra; Martin v. State, supra; Hutcherson v. State* (1978), 178 Ind.App. 8, 381 N.E.2d 877.

Where the defendant's legal authority or practical ability to control the premises where contraband is found is not exclusive, his capability to exercise control over the substance still may be inferred, *see Martin v. State, supra,* but there must be some other evidence from which the trier of fact may infer the defendant's intent to exercise such control. *Id.* This intent is inferred from evidence demonstrating the accused's knowledge of the presence of the contraband and of its illegal nature. *Thomas v. State, supra; Martin v. State, supra; see* I.C. 35–24.1–4.-1–6 (1976) (repealed 1977) (requiring know-

ing possession); I.C. 35–48–4–6 (Supp.1983) (requiring knowing or intentional possession). The rule governing cases where contraband is discovered in a place over which the defendant has non-exclusive control was succinctly stated in *Martin v. State, supra:*

> "Where the accused did not have exclusive control of the premises, it may not be inferred that he knew of the presence of the drugs and had control of them unless there are other incriminating statements or circumstances tending to buttress such an inference. There must be additional evidence, apart from that of defendant's non-exclusive control of the premises, to permit an inference of knowledge."

175 Ind.App. at 508, 372 N.E.2d at 1197. *See Greely v. State* (1973), 158 Ind.App. 212, 301 N.E.2d 850. Evidence implying the requisite knowledge element of constructive possession includes: the defendant's admission that the contraband is his, *Thurman v. State* (1974), 162 Ind.App. 267, 319 N.E.2d 151; the defendant's flight from police officers,[2] *Ledcke v. State* (1973), 260 Ind. 382, 296 N.E.2d 412; furtive gestures indicating the defendant attempted to conceal the contraband, *Moss v. State* (1975), 165 Ind.App. 502, 333 N.E.2d 141; defendant's knowledge of the location of the contraband, *Tinnin v. State* (1981), 275 Ind. 203, 416 N.E.2d 116; proximity of the defendant to the contraband; *Thurman v. State, supra;* proximity of contraband to personal items belonging to the defendant, *O'Brien v. State* (1981), Ind. App., 422 N.E.2d 1266; contraband lying in plain view, *Thomas v. State, supra;* and the defendant's presence in a "drug manufacturing setting" where presence of the drugs would be obvious to the defendant and other circumstances fail to provide an innocent explanation for the defendant's presence, *Ledcke v. State, supra.*

■ Evidence sufficient to establish the requisite capability to exercise control over

an illegal substance—the second necessary element of constructive possession—must demonstrate the defendant's ability to reduce the substance to his personal possession or otherwise direct its disposition or use. *Martin v. State, supra; Corrao v. State* (1972), 154 Ind.App. 525, 290 N.E.2d 484. As noted, where the accused has exclusive or non-exclusive legal control over the place where contraband is discovered, or where he is shown to have had the practical ability to control that place, the necessary capability to exercise control over the illegal substance may be inferred. *Martin v. State, supra.*

■ Here, it should be noted that the defendant's mere presence in the vicinity of the contraband or mere association with a person having possession thereof will not be sufficient to sustain a conviction. *Ledcke v. State, supra; Martin v. State, supra.* Even where the defendant has nonexclusive control over the premises where contraband is discovered and is present at the time of discovery, there must be other evidence, besides mere presence, to prove the defendant's knowledge of the presence and forbidden character of the contraband to sustain the conviction. *Martin v. State, supra.* As a corollary to this proposition, it appears that a defendant's conviction for constructive possession will be reversed where the evidence shows *both* that the defendant was not present at the time when and the place where an illegal substance is discovered *and* that some other person had access to that place between the time the defendant was known last to be there and the time when the substance was found. *See Solano v. State* (1981), Ind.App., 426 N.E.2d 705; *Pier v. State* (1980), Ind.App., 400 N.E.2d 209; *Martin v. State, supra* (husband's conviction reversed); *cf. Greely v. State, supra.*

Ferguson argues that there was no evidence that he had exclusive control over the premises where the heroin was discovered and that evidence of his presence in

---

**2.** *But see Bradley v. State* (1972), 153 Ind.App. 421, 287 N.E.2d 759 (flight alone insufficient to sustain conviction but must be combined with other evidence establishing beyond a reasonable doubt that defendant is guilty of crime with which he is charged).

the apartment where heroin allegedly was sold, his passing physical proximity to the place where the heroin was discovered and his flight from the police is insufficient to sustain his conviction. In short, Ferguson argues, there was insufficient evidence connecting him with the heroin found on the basement floor to prove beyond a reasonable doubt · that he possessed the drug. The state counters that the evidence and reasonable inferences therefrom were sufficient to support the conclusion that Ferguson had the intent and the capability to exercise control over the contraband and, therefore, that he constructively possessed it.

■ Based on the foregoing facts and law, we must conclude the evidence was not sufficient to support the conclusion that Ferguson had constructive possession of the heroin found on the floor of the basement of the rear apartment. The evidence most favorable to the state supports the inference that Ferguson was in the apartment when the narcotics officers arrived to execute the search warrant, and that he fled the police through the apartment basement, directly past the place where the heroin was discovered, and through the cold air duct to the hotel portion of the building, where he was found by Det. Wurz. This evidence is sufficient to prove Ferguson's capability to exercise control over the contraband—*i.e.* "the ability to reduce the substance to his personal possession or to otherwise direct its disposition or use." *Martin v. State*, 175 Ind. App. at 507, 372 N.E.2d at 1197. The evidence, however, simply does not establish Ferguson's knowledge of the presence and the illegal nature of the contraband and, therefore, fails to establish the intent to

exercise control over the heroin necessary to a finding of constructive possession.

The state argues that Ferguson's knowledge and intent may be inferred from the evidence showing that he fled the police from the rear apartment, from which the police suspected heroin was being sold and in which pieces of tinfoil and a piece of brown paper bag with narcotics language written on it were discovered. We disagree. No narcotics or contraband of any sort were found in the upstairs portion of the apartment when the search warrant for those premises was executed. There was absolutely no evidence that Ferguson had any legal authority—exclusive or non-exclusive—by way of possessory interest in the apartment, which could connect him with the tinfoil and paper bag found therein. Nor does the state argue Ferguson had exclusive control over the premises from which his knowledge of the presence of any contraband found there might be inferred. *See Craig v. State, supra; Martin v. State, supra.* Regarding the tinfoil, which, according to Det. Wurz, "was laying in different areas on the floor, mostly corners and in the bathroom," (R. 153), we note there was no evidence of any connection between that tinfoil and the tinfoil packet of heroin discovered in the basement. If the tinfoil in the bathroom, where Ferguson was known to have been for three to four seconds before fleeing through the basement, had been shown to have traces of heroin on it, then the evidence might support the theory that Ferguson dashed into the bathroom to dispose of contraband. There was no such evidence presented, however, and Ferguson's presence in a room in the apartment where pieces of *plain tinfoil*[3] were found creates

---

**3.** There was no evidence that the tinfoil was of a size and shape typically used to package quantities of heroin or that traces of heroin were found on the tinfoil. In fact, the sum total of the testimony regarding the tinfoil found in the apartment consisted of the following, on direct exam of Det. Wurz by the prosecutor, who asked Wurz to identify State's Exhibit Number Three:

"A. This is a plastic heat-sealed envelope, which was heat-sealed by myself, containing

material I obtained from the apartment that I served the search warrant on, at twenty-six-o-six (2606) North College, the Sutherland Hotel.

Q. Would you describe, as you were going to before, before we had the exhibit marked, what the paper items were?

A. Yes. There's tinfoil that was found laying throughout the apartment on the floor and . . .

no inference that he had knowledge of the tinfoil packet of heroin in the basement of the apartment. Moreover, although a police handwriting analyst compared the narcotics writing on the brown paper bag with writings seized from Ferguson's person, the report containing the analyst's findings were not introduced into evidence by the state. Thus, there was no evidence that the narcotics language was written on the paper bag by Ferguson, and even if it were, there is no necessary or apparent connection between the piece of brown paper bag and the packet of heroin.

In addition, Ferguson's flight from the apartment when the police sought entry does not, in this case, create an inference of Ferguson's guilty knowledge of the crime with which he was charged, possession of heroin.[4] Ferguson's uncontradicted testimony at trial was that he did not know who was living in the apartment on the date of his arrest. Thus, he may have been in that apartment for any number of purposes, including burglary. His flight under these circumstances, from a place in which he had no apparent legal right to be, could just as reasonably be attributed to guilty knowledge of some other crime than possession of heroin and does not aid the inference that Ferguson had knowledge of the heroin found in the basement.

The fact that the path of Ferguson's flight necessarily crossed the place on the basement floor where the tinfoil packet of heroin was discovered also fails to establish his knowledge of the presence and illegal character of the substance contained in the packet. Although the basement floor was covered with dust and the tinfoil packet was not, raising the inference the tinfoil was recently dropped there, we are left to speculate as to *how* recently it was dropped—ten minutes, two hours, a day, or more—because there was no further evidence on this point. Furthermore, although the tinfoil packet was found on the basement floor apparently in plain view, there is no indication the heroin itself, wrapped inside the tinfoil, was obvious to anyone who saw the packet. Thus, while we may infer Ferguson knew of the pres-

Q. Now, which apartment, specifically, is this?
A. This is the apartment where Mr. Ferguson ran from.
Q. All right.
A. And it was laying in different areas on the floor, mostly corners and in the bathroom. And, also, on the dresser was this piece of brown paper bag with some writings on it, which, from my experience as a narcotics officer, would be narcotics language."
(R. 153–54) In addition, the dissent states that Ferguson's pre-flight stop of "three or four seconds" in the bathroom (R. 170–71) coupled with the finding of bits of tinfoil there is evidence that Ferguson attempted to flush away contraband. Absent any evidence of any traces of contraband on any of the bits of tinfoil, we believe Ferguson's time in the bathroom was too brief to support such an inference.

4. In *Bradley v. State* (1972), 153 Ind.App. 421, 427–28, 287 N.E.2d 759, 762, we stated:
"One example of circumstantial evidence is flight from the scene of a crime. While evidence of flight is competent to show a consciousness of guilt, it is for the trier of fact to determine what weight and value should be placed upon such evidence. *State v. Torphy* (1940), 217 Ind. 383, 28 N.E.2d 70; *Banks v. State* (Ind.1971) [257 Ind. 530], 276 N.E.2d 155. Furthermore, flight alone is insufficient to sustain a conviction; it must be combined with other evidence which establishes beyond a reasonable doubt that the defendant committed the crime *with which he is charged.* The general rule recognized by most jurisdictions is perhaps best stated in 1 Underhill, Criminal Evidence § 373 at 924:
'It cannot be said that flight or attempted flight before arrest, taken alone, raises a legal presumption of guilt so that an inference of guilt must be drawn therefrom, or that his flight, without regard to the motive which prompted it, is, in law, proof of guilt. At most it is only one circumstance to be considered by the jury with the reasons that prompted it, tending to show guilt or by which an inference of guilt may be raised, and *it has no probative force unless it satisfactorily appears that the accused fled to avoid arrest or imprisonment for the crime charged.* Even then, its force is slight, depending on the efforts made, the means employed, and the motives and knowledge by which the act was accompanied. The departure of the accused may have been prompted by motives consistent with innocence. He may have feared arrest for a crime totally distinct from that for which he is indicted or he may have apprehended violence at the hands of the police.'" (Emphasis supplied; footnotes omitted.)

ence of the tinfoil packet, we may not infer without conjecture that he knew of the illegal character of any substance inside the packet. *Cf. Thomas v. State, supra* (defendant's knowledge of the presence and illegal nature of contraband inferred from the fact that she was found sitting at a table with an *open* packet of heroin directly in front of her). In the present case, the evidence supports no inference stronger than Ferguson's mere passing presence in the vicinity of the contraband he was charged with possessing—an inference too weak to sustain his conviction. *See Ledcke v. State, supra; Martin v. State, supra.*

The evidence presented by the state certainly tends to establish the suspicion that Ferguson was guilty of something, perhaps even possession of heroin. However, as our supreme court has stated:

"If the evidence merely tends to establish a suspicion of guilt, or the mere opportunity to do so [commit the offense] it is clearly insufficient to sustain the conviction.... The law requires substantial evidence to prove guilt beyond a reasonable doubt. We cannot predicate an affirmance of guilt upon mere possibility because of opportunity or suspicion."

*Manlove v. State* (1968), 250 Ind. 70, 83, 232 N.E.2d 874, 881, *quoted in Dunn v. State* (1973), 260 Ind. 142, 147, 293 N.E.2d 32, 34; *see also Ruetz v. State* (1978), 268 Ind. 42, 51, 373 N.E.2d 152, 157 ("[A] reasonable inference of guilt, sufficient to base a conviction upon, must be more than a mere suspicion, conjecture, conclusion, guess, opportunity or scintilla."); *accord People v. Jackson* (1961), 23 Ill.2d 360, 178 N.E.2d 320 (mere probabilities will not support a conviction). We must conclude the evidence in this case was insufficient to support Ferguson's conviction.

Reversed.

YOUNG, J., concurs.

CONOVER, J., dissents with separate opinion.

CONOVER, Judge, dissenting.

I respectfully dissent. While I agree absent proof the defendant had exclusive control of the premises there must be some other evidence of his intent to exercise control over the illegal substance discovered, the totality of the circumstances here supports a reasonable inference Ferguson was in possession of the heroin discovered by the police.

The majority states Ferguson's flight standing alone is insufficient. He may have been a burglar trying to elude the officers. If flight alone were involved here, that position would be viable. However, other action by Ferguson negates the burglary flight theory and supports his constructive possession of the heroin.

First, the only door to the apartment was secured by two-by-fours. It was so secure, the police gained entry only by breaking down an adjacent *wall* with sledge hammers. It took them eight to ten minutes to do so. When the police knocked and identified themselves, Ferguson did not flee immediately. He first ran to the apartment's bathroom and remained there for four or five seconds. Nervous burglars do not take time out for a restroom stop as the police are breaking down the door. The bathroom trip was for some other purpose. Coupled with the finding of bits of tin foil on the bathroom floor, the bathroom trip was some evidence the suspect attempted to flush away contraband, a common practice in drug raid cases.

Next, the police discovered a tin foil packet filled with heroin less than two feet from the cold air duct in the basement, the suspect's only means of egress from the barricaded apartment.[1] The tin foil packet containing heroin had been recently deposited there because it was dust free. Everything else in the basement was dust covered. Thus, a reasonable inference arises, the person who used the airduct to escape

1. A police officer had the only window in the apartment under surveillance at the time. No

one left by that window.

as the police were breaking in was in possession of the packet and dropped it as he left.

Finally, a canine unit sniffed the basement, but no one was found. Dirt and scuff marks indicated the air duct had been used in the escape. The officer who climbed the air duct knocked on the apartment next door and found Ferguson in dust-covered clothes. His description matched that of the person who fled as the police attempted to enter the original apartment.

In my opinion, such evidence demonstrates (a) Ferguson was the suspect, and (b) he at least had exclusive control of the basement, specifically the area thereof where the heroin packet was found. Thus, there is substantial evidence of probative value supporting his conviction.

I would affirm the trial court.