Saul LEWIS, Appellant (Defendant),

v.

STATE of Indiana, Appellee (Plaintiff).

No. 2–385–A–65.

Court of Appeals of Indiana, Second District.

Sept. 5, 1985.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

Andrew P. Sheff, Bennett and Sheff, Indianapolis, for appellant.

BUCHANAN, C.J.

### CASE SUMMARY

Defendant-appellant Saul Lewis (Lewis) appeals his trial court convictions of possession of heroin, a class D felony,[1] and resisting law enforcement, a class A misdemeanor,[2] claiming insufficiency of the evidence.

We affirm.

---

**1.** Ind. Code 35–48–4–6 (Supp. 1984).

**2.** IC 35–44–3–3 (Supp. 1984).

## FACTS

The facts most favorable to the State reveal that on February 3, 1984, Indianapolis Police Department Detectives Barbara Schneider (Schneider), Daniel Harvey (Harvey), Robert Turner (Turner), and other officers executed a search warrant for an Indianapolis apartment. This second story apartment could only be reached by an outside stairway leading to the lone entrance. At trial, Schneider testified that the officers proceeded up the stairway, knocked and announced their presence, and then peered through a glass inset in the door. The apartment consisted of a kitchen and a bathroom located at the front with a bedroom located in the rear of the unit. The kitchen and bathroom were visible from the entry door, but only the door to the bedroom was visible as the officers looked through the glass inset. While peering through the glass inset, they observed William Tinsley (Tinsley) run from the bedroom across the kitchen area of the dwelling into the bathroom. At this juncture, the officers effected a forced entry and apprehended Tinsley as he attempted to flush a hypodermic syringe down the toilet. Upon entry, Turner proceeded down the short hallway to the bedroom in time to observe Lewis and Ron White (White), the apartment lessee, jump out of the second story window.

Turner advised Harvey of the escape, and Harvey gave chase. Harvey testified that Lewis, without a shirt or shoes despite the cold February weather, was hobbling down the street when Harvey saw him. Harvey identified himself as a law enforcement officer and ordered Lewis to stop. However, Lewis proceeded another thirty or forty yards, although having broken his leg in the jump, before Harvey apprehended him.

In the apartment bedroom, the officers found a warm "cooker" which is a device used to liquify drugs prior to injection, a hypodermic syringe containing a liquid, and a small folded aluminum packet on the nightstand in the bedroom. Outside, they found several small envelopes on the ground underneath the window from which Lewis and White jumped. Laboratory analysis indicated these items, with the exception of the hypodermic syringe fished from the toilet, tested positive for the presence of heroin.

The cause proceeded to trial before the court on August 2, 1984. During the trial, the contraband seized in the apartment was admitted into evidence as State's exhibits numbers one through five. The State also introduced State's exhibit number six, which contained the results of laboratory analysis on State's exhibits numbers one through five. The following exchange occurred:

> "Mr. Palguda [deputy prosecutor]: State's Exhibit No. 6, for the record Your Honor, is a narcotics examination from the Indianapolis Police Department from Chris Walker, Forensic Chemist, showing the results of the tests performed on the State's Exhibits Numbers 1, 2, 3, 4, and 5 and I call the Court's attention that these are numbered by the numbers that are on the evidence markers which are lab items A1B, A2, A3A, A3B, and B2.
>
> Judge: They are respectively labeled?
>
> Mr. Palguda: Yes sir.
>
> Judge: On the exhibit and on the sheet, State's Exhibit 6. Well, let me have a moment to look at them. (Pause) All right, you may proceed."

*Record* at 54, 58. State's exhibit number six was admitted by stipulation of the parties without objection. Lewis was found guilty and sentenced on August 23, 1984. Following the denial of his timely motion to correct error, this appeal ensued.

## ISSUES

Lewis presents two issues for our consideration:

1. Was the evidence sufficient to sustain Lewis's conviction for possession of heroin?

2. Was the evidence sufficient to sustain Lewis's conviction for resisting law enforcement?

## DECISION

**ISSUE ONE**—Was the evidence sufficient to sustain Lewis's conviction for possession of heroin?

**PARTIES' CONTENTIONS**—Lewis's attack upon the evidence is twofold; he contests the sufficiency of the evidence to establish constructive possession of the heroin by asserting that the evidence demonstrates, at most, his mere presence in the area where drugs were discovered. He also alleges insufficient evidence to determine the presence of a controlled substance by assailing the effect of the stipulated admission of a laboratory analysis report.

The State responds that the facts of the case constitute a sufficient basis for constructive possession and that the evidence is likewise adequate to establish the presence of heroin, a controlled substance.

**CONCLUSION**—The evidence is sufficient to sustain Lewis's conviction for possession of heroin.

Lewis's dual assault upon his conviction is more easily understood when each facet of his argument is considered separately. However, our employment of the well-known standard of review for questions of sufficiency of the evidence remains constant. *See Davenport v. State* (1984), Ind., 464 N.E.2d 1302, 1306–07. We turn first to the question of possession.

### A.  CONSTRUCTIVE POSSESSION

■  The evidence is sufficient to establish Lewis's constructive possession of heroin. As the parties concede that no evidence exists of actual possession, the focal point of our inquiry is the evidence which may lead to a finding of constructive possession. Constructive possession is defined as "an intent and capability to maintain control and dominion over" the illicit substance. *Thomas v. State* (1973), 260 Ind. 1, 4, 291 N.E.2d 557, 558; *see also Davenport, supra; Snyder v. State* (1984), Ind.App., 460 N.E.2d 522, *trans. denied.* Thus, the evidence must reveal that Lewis had both the capability and the intent to control the heroin found in the apartment.

The concept of the capability to exert control or dominion was explored in *Martin v. State* (1978), 175 Ind.App. 503, 507, 372 N.E.2d 1194, 1197:

"For constructive possession, *the evidence need only establish* the defendant's ability to control, that is, *the ability to reduce the substance to his personal possession or to otherwise direct its disposition or use.*

Control in this sense concerns the defendant's relation to the place where the substance is found: whether the defendant has the power, by way of legal authority or in a practical sense, to control the place where, or the item in which, the substance is found."

(Citations omitted) (emphasis supplied) (footnote omitted). Here, the evidence and the reasonable inferences which may be drawn therefrom establish that Lewis did have the practical ability to exercise dominion and control over the heroin. From the time the police officers began their execution of the warrant and peered through the glass inset, Lewis was present in the small bedroom where a hypodermic syringe filled with a liquid containing heroin was in plain view. Also, when the police officers entered the apartment they found a warm cooker, which indicates very recent usage to liquify drugs. The reasonable inference from this evidence is that Lewis had the practical ability to control the heroin, if he so chose. This is not a situation when the drugs were hidden from sight or physically in possession of only one person. *See Crowder v. State* (1980), Ind.App., 398 N.E.2d 1352 (constructive possession of marijuana on the part of the driver of an automobile could not be inferred when a plastic bag containing marijuana was visible in the pant's pocket of one of his passengers); *Corrao v. State* (1972), 154 Ind. App. 524, 290 N.E.2d 484 (passengers in backseat of car could not be found to have the capability to exercise dominion and control over the large quantity of marijuana found in the trunk of the car).

■  Likewise, the evidence is sufficient to establish Lewis's intent to exercise dominion and control over the heroin. The

requisite intent may be inferred when the defendant is in exclusive possession of the premises; however, absent such exclusive possession, "the inference of intent must be supported by additional circumstances pointing to an accused's knowledge of the nature of the contraband and its presence." *Parson v. State* (1982), Ind.App., 431 N.E.2d 870, 872. The evidence showed that only White, the apartment lessee, had any possessory interest in the premises where the drug was found; thus, we must consider any additional circumstances which point to Lewis's knowledge of the heroin and its presence.

■ Among the factors which have been found to constitute additional circumstances bolstering a showing of intent for the purposes of constructive possession are a defendant's admission of ownership of the contraband, flight, proximity to contraband in plain view, and furtive conduct. *See Crabtree v. State* (1985), Ind.App., 479 N.E.2d 70; *Snyder, supra; Parson, supra,* at 873 (Shields, J. dissenting). However, a defendant's mere presence where drugs are located or his association with persons who possess drugs is not alone sufficient to support a finding of constructive possession. *Ledcke v. State* (1973), 260 Ind. 382, 296 N.E.2d 412; *Watt v. State* (1980), Ind.App., 412 N.E.2d 90.

■ Here, the evidence establishes more than Lewis's mere presence. The evidence creates a reasonable inference that at the time the police officers effected their entry Lewis was in close proximity to a heroin filled hypodermic syringe in plain view on the nightstand in the small bedroom. Although the evidence does not establish exactly how long Lewis had been in the apartment, the warm cooker indicates illicit activity in the very recent past. Moreover, Lewis's presence in the bedroom was established by the fact that the officers peering through the glass inset observed only Tinsley run from the bedroom, not Lewis or White. While not dispositive, Lewis's state of partial undress is also indicative of a less than recent arrival at the premises. In addition, Lewis fled when the police effected their entry. While flight alone does not prove guilt, it is an additional factor which

buttresses an inference of intent. *Hutcherson v. State* (1978), 178 Ind.App. 8, 381 N.E.2d 877, *trans. denied,* (1979), 270 Ind. 594, 389 N.E.2d 270 (Pivarnik, J. dissenting); *Bradley v. State* (1972), 153 Ind.App. 421, 287 N.E.2d 759. The effect of all this evidence is to support an inference that Lewis possessed the requisite intent to exert dominion and control over the heroin found in the bedroom.

We reject, however, the notion that constructive possession could be predicated upon Lewis's proximity to the envelopes containing drugs found on the ground outside the apartment window *without* a showing as to which of the two men who departed via the window dropped the drugs, if either, and when, in fact, the envelopes actually landed on the ground. Our decision is based upon the circumstances which place Lewis in the presence of the heroin filled hypodermic syringe and other apparatus in plain view at the time entrance was effected by the police, reinforced by the inference of knowledge flowing from his unsuccessful attempt at flight. By contrast, the Fourth District of this court reversed a conviction for possession when the heroin was discovered on the basement floor of the defendant's apartment building even though the defendant fled his apartment as police attempted to serve a search warrant, his only escape route through an air duct took him past the place where the heroin was later discovered, and he was covered with the same sort of dust and grime as was found disturbed at the heroin's hidden location. *See Ferguson v. State* (1985), Ind.App., 481 N.E.2d 161; *cf. Phillips v. State* (1974), 160 Ind. App. 647, 313 N.E.2d 101 (constructive possession on the part of defendant when drugs were found in the *sealed* passenger compartment of a police car which had been searched and found drug free prior to transporting defendant in the car).

We now shift our attention to the evidence which establishes that heroin was present in the apartment.

### B. PRESENCE OF HEROIN

■ The evidence is sufficient to show that the items recovered from the apart-

ment contained heroin. Lewis attacks the effect and adequacy of State's exhibit number six, which is the police laboratory analysis of the items seized at the time of Lewis's arrest. The lab report was admitted by stipulation.

"Once a stipulation is entered into between the parties it is the generally accepted rule that the facts so stipulated are conclusive upon both the parties and the tribunal.

It has been held, however, that a stipulation of facts will not be construed to admit facts which were obviously intended to be controverted."

*Faught v. State* (1974), 162 Ind.App. 436, 441, 319 N.E.2d 843, 847; (citations omitted); *see also Coonan v. State* (1978), 269 Ind. 578, 382 N.E.2d 157, *cert. denied*, 440 U.S. 984, 99 S.Ct. 1798, 60 L.Ed.2d 246.

The results of the lab report contained in State's exhibit number six were binding upon the parties. As the record reveals, the lab report was admitted by stipulation without objection or qualification by Lewis's counsel. Under these circumstances, we cannot say that the facts contained in State's exhibit number six were obviously intended to be controverted. *Cf. Lyons v. State* (1982), Ind., 431 N.E.2d 78 (state could not deny authenticity of police investigator's note which State had already stipulated was authentic). Moreover, State's exhibits one through five were adequately connected to State's exhibit number six. The prosecutor explained the relationship of the State's exhibit numbers to the lab identification numbers in the report for the judge. He did so without objection or qualification by Lewis. As contained in the record, the exhibit numbers and lab identification numbers from each item are visible upon the individual items of evidence so as to allow the trier of fact to correlate the items and the corresponding test results.

ISSUE TWO—Was the evidence sufficient to sustain Lewis's conviction for resisting law enforcement?

PARTIES' CONTENTIONS—Lewis claims his conviction should not stand because the evidence is insufficient to show that he

knew the persons entering the apartment were law enforcement officers.

The State replies that the evidence is sufficient to sustain the conviction.

CONCLUSION—The evidence is sufficient to sustain Lewis's conviction for resisting law enforcement.

■ To support Lewis's conviction, the evidence must show that he knowingly or intentionally fled from an officer after the officer visibly or audibly identified himself and ordered Lewis to stop. *Spears v. State* (1980), Ind.App., 412 N.E.2d 81; IC 35–44–3–3.

■ Here, Harvey proceeded outside the building and observed Lewis proceeding up the street on his broken leg. Harvey testified that he identified himself as a police officer and that he ordered Lewis to stop; however, Lewis continued to hobble away. Having jumped from a second story window to elude a police search, Lewis cannot be said to have been unaware of the police presence. The evidence is sufficient. *Spears, supra.*

The judgments of conviction are affirmed.

SHIELDS, J., concurs.

RATLIFF, P.J. (sitting by designation), concurs.