Casey **LEVENDUSKI**, Appellant–Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 13A05–0605–CR–229.

Court of Appeals of Indiana.

Nov. 21, 2007.

Jeffrey K. Branstetter, Blanton & Branstetter, LLC, Jeffersonville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Casey Levenduski asserts the trial court should have suppressed evidence of methamphetamine production found in his home because police conducted an unlawful warrantless search of his property and then improperly obtained a search warrant based on that warrantless search. As the evidence was obtained pursuant to an overly broad "catch-all" provision of the warrant, it should have been suppressed even if the warrant was properly obtained. We therefore reverse and remand.[1]

### FACTS AND PROCEDURAL HISTORY

In August of 2003, a Crawford County deputy sheriff and a conservation officer went to Levenduski's home to execute an arrest warrant. There was no response when the deputy knocked on the front door. The officers heard a sound from a wooded area behind the residence and they thought Levenduski might be trying to leave on an all-terrain vehicle. They

---

1. As we find the methamphetamine-related evidence should have been suppressed due to defects in the warrant, we need not address Levenduski's alternative arguments that one of the methamphetamine offenses of which he was found guilty was a lesser-included offense of another charge and that the officers conducted a warrantless search of areas where Levenduski had a reasonable expectation of privacy.

walked down a mowed path that led to a footpath and through a fencerow. At the end of the footpath near what was described as a "grown up fence row area," (Tr. at 33), they found two pots with three marijuana plants in them. The deputy did not know who owned the property where the plants were found. The officers also found pots and potting soil in Levenduski's yard.

The deputy left to get a search warrant on the premise the empty pots probably had been used to grow marijuana and there might be marijuana in the residence. A state police officer arrived at Levenduski's home and the deputy contacted him and asked him to measure how far the plants were from the home. While taking the measurements, the officer found two dead marijuana plants in a wooded area about twelve feet from a garage. The state police officer told the deputy what he had found.

The deputy obtained a search warrant and returned to the home where three other officers were waiting. The warrant authorized police to enter Levenduski's house and search for marijuana, hashish, "instruments used to manufacture, introduce into the body or deal marijuana," (App. at 28), money records, notes, documents, or videotapes "relating to the use, dealing, or manufacture of marijuana," (*id.*), instruments used in growing or processing marijuana, paraphernalia "and *any other item of contraband which are [sic] evidence of a crime." (Id.)* (emphasis supplied).

The officers knocked on the front door and received no response, then kicked the door in and entered the house. Levenduski was inside and the police found various items related to the production of methamphetamine.

Levenduski was charged with six offenses. One was dismissed, and he was found not guilty of possession of marijuana and possession of paraphernalia. He was found guilty of Class C felony possession of methamphetamine, Class B felony dealing in methamphetamine, and Class C felony possession of chemical reagents or precursors with intent to manufacture.

## DISCUSSION AND DECISION

 The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution provide "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures...." U.S. Const, amend. IV; Ind. Const., art. 1 § 11. Created to protect one's right to privacy, this protection against unreasonable, state-sponsored searches and seizures is a principal mode of discouraging lawless police conduct. *Jones v. State,* 655 N.E.2d 49, 54 (Ind. 1995), *reh'g denied.* Consequently, evidence obtained through an unreasonable search and seizure is not admissible. *Id.* An agent of the government must obtain a search warrant from a neutral, detached magistrate before undertaking a search of a person or private property, except under special circumstances fitting within certain carefully-drawn and well-delineated exceptions. *Id.*

 Our standard of review of rulings on the admissibility of evidence is effectively the same whether the challenge is made by a pre-trial motion to suppress or by a trial objection. *Burkes v. State,* 842 N.E.2d 426, 429 (Ind.Ct.App.2006), *trans. denied* 855 N.E.2d 1006 (Ind.2006). We look for substantial evidence of probative value to support the trial court's decision. *Id.* We consider the evidence most favorable to the decision and any uncontradicted evidence to the contrary. *Id.* Accordingly, when ruling on the admissibility of

evidence at trial, we consider evidence from a motion to suppress hearing that is favorable to the defendant and that has not been countered or contradicted by foundational evidence offered at trial. *Id.*

### Validity of the "General" Warrant as to Methamphetamine Evidence

The Fourth Amendment to the United States Constitution requires search warrants to "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

> General warrants, of course, are prohibited by the Fourth Amendment. The problem posed by the general warrant is not that of intrusion *per se,* but of a general, exploratory rummaging in a person's belongings. The Fourth Amendment addresses the problem by requiring a "particular description" of the things to be seized. This requirement makes general searches impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

*Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) (internal quotations and citations omitted). A warrant that leaves the executing officer with discretion is invalid. *Warren v. State,* 760 N.E.2d 608, 610 (Ind.2002).

In *Warren,* police obtained a warrant for an apartment where Warren lived with someone who had been killed during the commission of a crime. The police discovered identification cards and driver's licenses that led them to focus their investigation on Warren.

The warrant listed the items to be seized as "guns, ammunition, gun parts, lists of acquaintances, blood, microscop0ic [sic] or trace evidence, silver duct tape, white cord and any other indicia of criminal activity including but not limited to books, records, documents, or any other such items." *Id.* (emphasis supplied). Warren argued the warrant was therefore "without any practical limit as to the items for which a search may be conducted." *Id.* He challenged the search warrant as granting "unbridled discretion to the police regarding the items sought in violation of the search and seizure clauses of the United States and Indiana Constitutions." *Id.* Our Supreme Court agreed the phrase "any other indicia of criminal activity including but not limited to books, records, documents, or any other such items" granted the officer "unlawful unbridled discretion to conduct a general exploratory search." *Id.*

However, in Warren's case the infirmity of the "catchall language" did not doom the entire warrant; rather, it required suppression of only the evidence seized pursuant to that general part of the warrant and not the suppression of evidence obtained pursuant to the valid specific portions of the warrant. *Id.* The identification cards and driver's licenses were not seized pursuant to the "catchall" language because they were included within the "lists of acquaintances" described in the search warrant. They were properly seized because they were "particularly described" in the warrant. *Id.*

In the case before us, by contrast, all the methamphetamine-related evidence Levenduski sought to suppress was obtained pursuant to the illegal "catchall" provision in the warrant and should accordingly have been suppressed. The warrant authorized police to enter Levenduski's house and search for *marijuana, hashish,* "instruments used to manufacture, introduce into the body or deal *marijuana,*" (App. at 28) (emphasis supplied), money records, notes, documents, or video-

tapes "relating to the use, dealing, or manufacture of *marijuana*," (*id.*) (emphasis supplied), instruments used in growing or processing *marijuana*, paraphernalia "and *any other item of contraband which are [sic] evidence of a crime.*" (*Id.*) (emphasis supplied). As to the evidence unrelated to marijuana or hashish, the warrant was invalid to the extent it "[left] the executing officer with discretion," *Warren*, 760 N.E.2d at 610, and the trial court should have granted Levenduski's motion to suppress that evidence.

■ The State acknowledges the language in the warrant purporting to authorize a search for and seizure of "any other item of contraband which are [sic] evidence of a crime" is "perhaps a bit too general in its description of the items permitted to be searched for by the warrant." (Br. of the Appellee at 19.) But it asserts the discovery and seizure of the methamphetamine was reasonable because the "methamphetamine evidence" was discovered "primarily in plain view." (*Id.* at 19–20.) It was not.

■ The plain view doctrine stands for the premise that objects in plain view of an officer who rightfully occupies a particular location can be seized without a warrant and are admissible as evidence. *Gee v. State*, 810 N.E.2d 338, 341 (Ind.2004). In *Hopkins v. State*, 582 N.E.2d 345, 351 (Ind.1991), *reh'g denied*, a warrant authorized a search of Hopkins' residence and car for "[e]vidence of commission of crime of murder of Clarence A. Guffey, including, without limitation, black tire tool or tire iron, blue jeans and blue shirt." Police seized from his car a towel with hair similar to the victim's and a spot that appeared to be blood.

Hopkins argued the warrant's "evidence of commission of crime ... without limitation" language was so overbroad as to be invalid, leaving the tire tool, blue jeans and blue shirt the only items described with

sufficient particularity to be validly covered by the warrant. He argued that because the warrant was invalid for overbreadth, police had no lawful right to be in his car and the plain view exception was inapplicable. He thus asserted admission of this physical evidence linking him to the murder was reversible error.

Our Supreme Court determined the officer had the right to search the car for those items particularly described in the warrant and thus had a right to be there. *Id.* at 351. The seizure of the towel in plain view was not error. *Id.* Assuming *arguendo* the warrantless search of the area outside Levenduski's residence was permissible and the search warrant was properly obtained, the police had the right to be inside Levenduski's house to search for the marijuana-related items specifically named in the warrant.

The State directs us to some ninety pages scattered throughout the transcript, which pages it characterizes as including "evidence of methamphetamine manufacturing in plain view." (Br. of Appellee at 20.) As best we can determine those pages of the transcript do not support that characterization. We accordingly cannot find the methamphetamine-related evidence seized pursuant to the illegal "catch-all" provision of the warrant was in "plain view."

The State also directs us to testimony that the police found inside Levenduski's house "articles we believe to be associated with methamphetamine manufacturing," (Tr. at 25), but that testimony does not indicate the articles were in "plain view." One officer testified as to what he saw during a "protective sweep" (Tr. at 129) of the house: "There was [sic] many items of interest in plain view. There was [sic] numerous chemical reagents or precursors

for the manufacture of methamphetamine." (*Id.*)

Levenduski was charged with possession of only two precursors—iodine and red phosphorous—but this testimony does not indicate such were in plain view. There was evidence red phosphorous was confiscated at the scene by the Clandestine Lab Team, but no testimony it was ever in "plain view." Police testified foil with "burnt residue" (*id.* at 154, 155), was found in plain view, but there was no testimony the "residue" was methamphetamine or either of the precursors. Police testified they saw, in a cabinet with an open door, certain items they characterized as "a precursor or reagent," (*id.* at 155), but those were not the precursors Levenduski was charged with and convicted of possessing. There was testimony iodine was found in a box or bag inside the garage, but no indication the contents of the box or bag were in plain view.

The State has not demonstrated the evidence obtained pursuant to the illegal "catch-all" provision of the search warrant was found in plain view. It therefore should have been suppressed. *See Chandler v. State,* 816 N.E.2d 464, 468 (Ind.Ct. App.2004):

> Nor is there evidence the marijuana was in plain view. Officer James Walsh testified some marijuana 'was found in the middle bedroom' and 'in the living room.' There was no direct testimony this marijuana was in plain view; as the State bears that burden of proof, we will not presume it was.

(Internal citations and footnote omitted). In *Chandler* there was "a passing reference to the marijuana in the living room being found 'on the coffee table,'" *id.* n. 7, but we noted "the record does not indicate whether it was in plain view, obscured by other objects, or hidden inside a container. Given that dearth of information, we de-

cline to hold that an item on a table is presumptively 'in plain view.'" *Id.*

## CONCLUSION

We reverse the denial of Levenduski's motion to suppress, and we remand.

Reversed and remanded.

SHARPNACK, J., concurs.

BAILEY, J., dissenting with separate opinion.

BAILEY, Judge, dissenting.

I agree with my colleagues that the "catch-all" provision of the warrant is overly broad. But I disagree with their conclusion that all the methamphetamine-related evidence Levenduski sought to suppress was obtained pursuant to that provision of the warrant and, thus, should have been suppressed. In my view, the officers were proceeding under the valid portion of the warrant when they found the items at issue in plain view.

The search warrant names Levenduski's residence and outbuilding and authorizes officers to "diligently search" and seize the following items:

> Marijuana, Hashish, instruments or chemicals used to manufacture, introduce into the body or deal marijuana; any U.S. currency, records, notes, documents, videotapes relating to the use, dealing or manufacturing of marijuana, growing or processed and any other instrument used in the processing or cultivating of marijuana, any paraphernalia and any other item of contraband which [is] evidence of a crime.

Appellant's App. 28. Inclusion of the overly broad phrase "any other item of contraband which [is] evidence of a crime" does not render the entire warrant illegal. *See Warren v. State,* 760 N.E.2d 608, 610 (Ind. 2002). Pursuant to the remaining valid

part of the warrant, officers were empowered to search any area within the residence and outbuilding where the designated marijuana-related items reasonably might be found. *See Allen v. State,* 798 N.E.2d 490, 500 (Ind.Ct.App.2003).

Although the warrant does not specifically authorize the search and seizure of methamphetamine or its precursors, under the plain view doctrine, police may seize other contraband if they are lawfully in a position from which to view the item, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the item. *Warner v. State,* 773 N.E.2d 239, 245 (Ind.2002).

The record of the suppression hearing and trial in this case could be clearer regarding the appearance and location of incriminating items found during the search of the residence and in the outbuilding. From what I can discern, however, Levenduski's challenge was to the foundational basis for issuance of the warrant, not to its scope.[2] Thus, evidence regarding the plain view doctrine was not developed as it might have been.

Nevertheless, officers were in the residence and outbuilding lawfully by virtue of the valid portion of the search warrant. The areas in which officers searched for "Marijuana, hashish, instruments or chemicals used to manufacture, introduce into the body or deal marijuana" plus "U.S. currency, records, notes, documents, videotapes" and "any other instrument used in the processing or cultivating of marijuana" include areas where officers found items related to methamphetamine use and production. In my opinion, testimony and exhibits sufficiently show that the incriminating nature of the items was immediately apparent. Because officers had a lawful right of access to the evidence, they could seize it. I would affirm the trial court on this issue. For this reason, I respectfully dissent.

---

2. In reply to the State's waiver argument, Levenduski maintains that, on page 27 of his memorandum of law supporting his motion to suppress, "he advances the argument that the warrant is facially deficient as being transformed into a general warrant." Appellant's Reply Br. at 8. That document is not part of our record.