**Kenny D. LEE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71A03–1103–CR–118.**

Court of Appeals of Indiana.

Nov. 1, 2011.

Sean P. Hilgendorf, South Bend, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Kenny D. Lee appeals his conviction following a bench trial for possession of cocaine as a class A felony.[1]

We reverse.

### ISSUES

1. Whether the trial court abused its discretion in admitting evidence.

2. Whether there is sufficient evidence to support the conviction.

### FACTS

During the two to three week period prior to June 24, 2010, officers with the South Bend Police Department conducted a couple of controlled buys from Eugene King, the target of the search warrant at a residence located at 526 Wenger Street, an apartment located across the street from a public park. Although the residence was leased to King's mother, Terry Byers–Fuller, she had not lived there for approximately one year. During that time, King, Lee, and "a whole lot of other people" were in and out of the residence. (Tr. 94).

During the controlled buys, officers observed a 2010 blue Dodge Charger parked in front of the residence "[s]everal times a week." (Tr. 22). They also observed King driving the Charger before.[2]

---

1. Ind.Code § 35–48–4–6.

2. It is not clear from the record who owned the Charger. Testimony during trial indicates that a girlfriend of King may have owned or rented it.

At approximately 6:30 a.m. on June 24, 2010, officers from the South Bend Police Department and Mishawaka Police Department set up surveillance outside 526 Wenger Street in order to secure it before executing a search warrant. The search warrant allowed for a search of the residence as well as "any and all vehicles involved with the property." (State's Ex. 1). The affidavit in support of the search warrant only sought that "any and all vehicles involved with the property" be included in the warrant. (State's Ex. 1). It did not describe with any specificity any vehicles or the vehicles' alleged connection to criminal activity.

No one entered or left the residence until 10:17 a.m. At that time, officers observed a man, later identified as Lee, exit the residence; get into the Charger, which was parked in front of the residence; and drive west. In order to execute the search warrant of vehicles involved with the property, officers initiated a traffic stop "less than a quarter mile away" from the residence. (Tr. 24). Upon questioning, Lee initially identified himself as "DaWayne Jones." (Tr. 34). Searches of the vehicle and Lee did not reveal any drugs or drug paraphernalia.

During the traffic stop of Lee, Byers–Fuller recognized the Charger as one belonging to a friend of King. Believing that the vehicle had been vandalized, Byers–Fuller pulled up in her vehicle and spoke with the officers. She then drove to the residence. After Byers–Fuller entered the residence, officers knocked and announced their presence in order to execute the search warrant of the residence. When Byers–Fuller failed to open the door, officers kicked in the door and entered the residence. They found Byers–Fuller in the kitchen and detained her.

Upon searching the residence, officers discovered approximately 28.16 grams of cocaine in a closed kitchen drawer, next to the refrigerator. In an adjacent drawer, officers found "clear plastic baggies with the corners missing" and "a baby spoon that contained a white powder residue." (Tr. 142). They also discovered Lee's Indiana identification in a cabinet above the refrigerator. The identification listed Lee's address as 2421 South Michigan Street in South Bend.

An officer subsequently transported Lee back to the residence, where Officer Alan Delinski advised him of his *Miranda* rights. Lee denied living at the residence and initially denied having seen any cocaine there. He, however, later admitted that he had seen King sell "between ten and eleven grams of cocaine at a time" from the residence. (Tr. 49). According to Lee, "normally people would call [King] and ask for a quantity of cocaine, normally a quantity amounting to twenty dollars worth of cocaine, and [King] would travel to them. But ... the customers that he trusted ... would come to the apartment and he would sell to them at the apartment." (Tr. 50). Lee also stated that he had observed cocaine, "[a]bout the size of two golf balls," in a kitchen drawer, next to the refrigerator. (Tr. 49).

On June 26, 2010, the State charged Lee with class A felony possession of cocaine. On January 13, 2011, Lee filed a motion to suppress "any and all evidence," arguing that he was "stopped and arrested without cause as a violation of his" constitutional rights. (App.6). The trial court denied the motion following a hearing.

The trial court commenced a two-day bench trial on January 19, 2011, during which the trial court overruled Lee's objection "to further testimony about what occurred after the stop of the Charger...." (Tr. 33). The trial court found Lee guilty as charged. Following a sentencing hearing on March 10, 2011, the

trial court sentenced Lee to thirty years with ten years suspended.

## DECISION

### 1. *Admission of Evidence*

 Lee asserts that the trial court abused its discretion in admitting his statements "and all other evidence gained as a result of his stop and detention...."[3] Lee's Br. at 4. Specifically, he argues that the search warrant pursuant to which the police officers stopped him was invalid as it failed to specify and describe the vehicles to be seized.

 Both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution proscribe general search warrants. " '[A] warrant must describe the place to be searched and the items to be searched for.' " *Overstreet v. State,* 783 N.E.2d 1140, 1158 (Ind.2003) (quoting *Phillips v. State,* 514 N.E.2d 1073, 1075 (Ind.1987)), *cert. denied,* 540 U.S. 1150, 124 S.Ct. 1145, 157 L.Ed.2d 1044 (2004). A warrant that leaves the executing officer with discretion is invalid. *Levenduski v. State,* 876 N.E.2d 798, 802 (Ind.Ct.App.2007).

In *Overstreet,* Overstreet asserted that trial court erred in failing to suppress items taken from his van pursuant to a search warrant because the warrant "lacked specificity, probable cause, and did not authorize a search of his van." *Id.* at 1160. The *Overstreet* court, however,

found that the warrant sufficiently described the van, where it " 'authorized and ordered a diligent search of all vehicles' " located at Overstreet's residence *and* stated "that '[a] grey van bearing Indiana license plate 41N4644 is parked in the driveway.' " *Id.* (citation to the record omitted).

In this case, neither the warrant nor the affidavit in support thereof described the vehicles to be searched; detailed the vehicles' connection to any criminal activity; or indicated the specific locations of the vehicles with any specificity to be searched.[4] Given the vague language of the warrant, which clearly gave officers discretion in determining which vehicles to search, we find the portion of the warrant allowing for the search of vehicles to be invalid. Accordingly, all evidence seized pursuant to the invalid language, but only pursuant to the invalid language, must be suppressed. *See Warren v. State,* 760 N.E.2d 608, 610 (Ind.2002) (holding that "catchall language does not doom the entire warrant, ... but rather only requires the suppression of the evidence seized pursuant to that part of the warrant but not the suppression of the evidence obtained pursuant to the valid specific portions of the warrant").

Here, the only evidence obtained as a result of the warrant's invalid language consisted of Lee's statements to the police. Those statements therefore must be sup-

---

**3.** Lee poses the issue as whether the trial court improperly denied his motion to suppress. He, however, did not seek an interlocutory appeal after the trial court denied his motion to suppress. Rather, he proceeded to trial. "Once the matter proceeds to trial, the question of whether the trial court erred in denying a motion to suppress is no longer viable." *Kelley v. State,* 825 N.E.2d 420, 424 (Ind.Ct.App.2005). The issue therefore is " 'more appropriately framed' as whether the evidence was admissible at trial." *Brown v.*

*State,* 929 N.E.2d 204, 206 n. 1 (Ind.2010) (quoting *Washington v. State,* 784 N.E.2d 584, 587 (Ind.Ct.App.2003)), *reh'g denied.*

**4.** We note that during the trial, Officer Delinski described the residence as part of a "multiple unit apartment complex...." (Tr. 14). Thus, any number of vehicles could have been parked near or in front of the property, and therefore, determined to be "involved" with the property.

pressed unless otherwise legally obtained, such as during a valid traffic stop.

Both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution protect the privacy and possessory interests of individuals by prohibiting unreasonable searches and seizures. *Barfield v. State,* 776 N.E.2d 404, 406 (Ind.Ct.App.2002). This protection also governs " 'seizures' of the person." *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

> Because a traffic stop is a seizure under the Fourth Amendment, police may not initiate a stop for any conceivable reason, but must possess at least reasonable suspicion that a traffic law has been violated or that other criminal activity is taking place. An officer's decision to stop a vehicle is valid so long as his on-the-spot evaluation reasonably suggests that lawbreaking occurred.

*Meredith v. State,* 906 N.E.2d 867, 869–70 (Ind.2009) (internal citations omitted).

■ Here, Officer Delinski testified that officers had conducted intermittent surveillance of the residence after completing a couple of controlled drug buys from King at the residence. He also testified that King had been observed driving the Charger; none of the controlled drug buys, however, had taken place in the vehicle. Officer Delinski further testified that prior to executing the search warrant for the residence, he observed "a male black [sic]" exit the residence; get into the Charger; and drive away. (Tr. 21). Officer Delinski did not identify the man as King or as bearing a resemblance to King and nothing in the record indicates that Lee had been involved in any controlled drug buys. Shortly thereafter, officers stopped Lee at Officer Delinski's command and pursuant to the search warrant.

Given the facts, we cannot say that the police officers had reasonable suspicion sufficient to conduct an investigatory stop of Lee. *See, e.g., Bovie v. State,* 760 N.E.2d 1195, 1198 (Ind.Ct.App.2002) (finding that the officer did not have reasonable suspicion to stop the defendant where the only basis for the stop was that the officer witnessed the defendant "and his passenger, a known drug user and seller, leave a 'known drug house' "). Given that the officers unlawfully stopped Lee, we cannot say that a basis exists for admitting Lee's resulting statements to officers. We therefore find that the trial court abused its discretion in admitting Lee's statements, made during and after the stop, to the officers.

### 2. *Sufficiency of the Evidence*

Lee asserts that there is insufficient evidence to support his conviction.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State,* 867 N.E.2d 144, 146–47 (Ind.2007) (quotations and citations omitted).

To convict Lee of class A felony possession of cocaine, the State was required to prove that he knowingly possessed at least three grams of cocaine within 1,000 feet of a park. *See* I.C. § 35–48–4–6.

This court has long recognized that a conviction for possession of contraband may be founded upon actual or constructive possession. Constructive possession is established by showing that the defendant has the intent and capability to maintain dominion and control over the contraband.

In cases where the accused has exclusive possession of the premises on which the contraband is found, an inference is permitted that he or she knew of the presence of contraband and was capable of controlling it. However, when possession of the premises is non-exclusive, the inference is not permitted absent some additional circumstances indicating knowledge of the presence of the contraband and the ability to control it. Among the recognized "additional circumstances" are: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) contraband is in plain view; and (6) location of the contraband is in close proximity to items owned by the defendant.

*Holmes v. State,* 785 N.E.2d 658, 660–61 (Ind.Ct.App.2003) (citations omitted). "These circumstances apply to show constructive possession even where the defendant is only a visitor to the premises where the contraband is found." *Collins v. State,* 822 N.E.2d 214, 222 (Ind.Ct.App. 2005) (citing *Ledcke v. State,* 260 Ind. 382, 296 N.E.2d 412, 416 (1973)), *trans. denied.*

■ It is undisputed that Lee did not exercise exclusive control of the premises where the cocaine was found. Thus, the State was required to present evidence of additional circumstances indicating Lee's knowledge of the presence of the cocaine and his ability to control it.

The evidence shows that officers discovered both Lee's identification and the cocaine in the residence's kitchen. The kitchen, however, was a common room, accessible to anyone in the residence; in fact, police officers discovered Byers–Fuller, the lessee, in the kitchen when they entered the residence. While Lee had been in the residence just prior to the execution of the search warrant, the State failed to show that he had been in close proximity to the cocaine.

Moreover, the evidence presented shows that the cocaine was in not in plain view; rather, police located it inside of a closed drawer. The police found two of the baggies of cocaine inside an opaque bag. They found a third baggie of cocaine underneath other items. They found a spoon with residue inside of another closed drawer. Although officers located Lee's identification in the same room, they found it in a separate upper cabinet.

Here, the State did not provide evidence of additional circumstances whereby the trier-of-fact could infer Lee knew of the presence of the contraband and had the ability to control it. We therefore reverse Lee's conviction.

Reversed.

VAIDIK, J., and FRIEDLANDER, J., concur.